OPINION
{¶ 1} Appellant, Neil J. Shannon, Jr., appeals the judgment entered by the Lake County Court of Common Pleas. Following a jury trial, appellant was convicted of one count of rape and two counts of unlawful sexual conduct with a minor.
 {¶ 2} The victim was fifteen years old during the relevant times in this matter. She would often frequent a local skating rink in Mentor, Ohio. One evening at the skating rink, she was introduced to Richard Batich ("Richie"), who was twenty-one years old. The victim began a relationship with Richie that she described as boyfriend-girlfriend. However, Richie did not characterize the relationship in this manner.
 {¶ 3} On June 8, 2001, the victim went to the skating rink with some of her friends. After being at the rink a short time, the victim left the rink with three of her friends. The group walked to Richie's parents' house, where Richie lived. Richie was not home at the time, but the group was informed that Richie was at his aunt and uncle's house, which was next door. The group went next door and found Richie there with his cousin Howard Shannon ("Howard"). Howard is appellant's brother.
 {¶ 4} While the group was talking outside, one of the victim's friends stated that the victim was there to have sex with Richie. The victim's friends left her at the house. The victim entered the house to use the restroom.
 {¶ 5} At some point, there was a coin toss to determine whether Howard or Richie would have intercourse with the victim. In her initial statements, the victim did not mention the coin toss. She later acknowledged there was a coin toss, but claimed she did not know the purpose of the coin toss. However, Richie testified that the victim was a willing participant in the coin toss.
 {¶ 6} Howard won the coin toss. The victim testified that he pulled her by the arm to a back bedroom. Howard then pushed her onto the bed and tried to take her pants off. The victim tried to stop this by grabbing her pants. A slight struggle ensued, but Howard was able to remove the victim's pants. Howard laid on top of the victim, and the victim responded "no." Howard responded "don't be scared," and began to rub the victim's vagina with his hand He removed his hand and started to insert his penis into the victim's vagina, and, again, the victim responded "no." Howard did not say anything in response and continued to have intercourse.
 {¶ 7} While Howard was having intercourse with the victim, appellant came home from work. Richie told appellant that Howard was in his room and that he should see what was going on. Appellant walked back to his room, opened the door, and saw Howard and the victim having intercourse. Appellant said "this is not happening" or "not in this room." The victim put her pants on, and Howard and the victim left appellant's room and went to Howard's parents' bedroom. The victim stood beside Howard while he picked the bedroom lock. The victim testified that she and Howard went into the parents' bedroom, where Howard pushed her on the bed and resumed having intercourse.
 {¶ 8} After Howard finished having intercourse with the victim, he left the room and told appellant it was his turn. Appellant went into his parents' bedroom. The victim was sitting on the end of the bed with her pants and underwear down around her knees or ankles.
 {¶ 9} The victim testified that appellant told her he could not find Richie and she responded "oh." Appellant began rubbing her vagina and laid on top of her. He then asked her "is it okay?" She responded "uh-uh." Appellant proceeded to have intercourse with the victim.
 {¶ 10} Appellant gave a statement to the police. Therein, he stated that the intercourse was consensual. He also stated that he inserted his fingers into the victim's vagina.
 {¶ 11} After the intercourse with appellant was finished, the victim left the house. At this time, her friends had returned and were waiting outside the residence. The victim told her friends that she had been raped by appellant and Howard. This information was relayed to an adult at the skating rink, who contacted the authorities.
 {¶ 12} The victim initially met with Detective Gerri Deutsch of the Mentor-on-the-Lake Police Department at 1:30 a.m. the morning following the incident. The detective did not take a statement at that time, because of what the victim had been through that night and the late hour. The detective asked the victim to return the next morning to give a statement. However, the victim had a previously scheduled family engagement in Indiana the next day. The detective requested the victim write down what happened on the night in question during her trip and bring it to the police station when she returned from her trip. The victim wrote what happened on a sheet of notebook paper and presented the paper to Detective Deutsch. Through the conversation that followed, it became apparent that there was a least one false statement on the paper, and the victim omitted any reference to the coin toss. Thereafter, the detective discarded the paper, and the victim gave a formal statement.
 {¶ 13} In June 2001, appellant was indicted on two counts of rape and one count of kidnapping. In October 2001, appellant was indicted on two counts of unlawful sexual conduct with a minor. These indictments were assigned individual trial court numbers, and the cases were consolidated at the trial court level.
 {¶ 14} Howard was also charged with crimes as a result of these events. Together, appellant and Howard filed a motion for a joint trial. The trial court denied the motion. The trial court found that a joint trial could cause undue confusion with the jury. In addition, the trial court noted that the motion was filed less than a week before appellant's trial date.
 {¶ 15} A jury trial was held, and appellant was convicted of one count of rape and two counts of unlawful sexual conduct with a minor. For the purposes of sentencing, the trial court merged the convictions for unlawful sexual contact with a minor with the rape conviction. The trial court sentenced Shannon to a prison term of eight years for the rape conviction.
 {¶ 16} Appellant has appealed from the judgments entered in both cases, and, on appeal, these cases have been consolidated for all purposes.
 {¶ 17} Appellant raises five assignments of error. His first assignment of error is:
 {¶ 18} "The defendant-appellant was denied his right to due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution, when the trial court failed to strike the alleged victim's statement from the evidence after it was discovered that the Mentor-on-the-Lake Police Department threw away the alleged victim's original statement and thus deprived the defendant-appellant the opportunity to examine it for inconsistencies."
 {¶ 19} In his first assignment of error, appellant asserts the trial court erred by failing to strike the alleged victim's statement. However, a review of his argument reveals his primary contention was the improper actions of the detective by throwing the original statement away and, thus, failing to preserve it for examination by the defense. Therefore, our analysis will focus on the implications of the detective's actions in throwing the document away, rather than the trial court's actions regarding the second statement.
 {¶ 20} "`[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'"[1] Evidence meeting this standard is also categorized as "materially exculpatory."[2]
 {¶ 21} "Evidence is materially exculpatory where: (1) the evidence possesses an exculpatory value that was apparent before the evidence was destroyed, and (2) is of such nature that the defendant would be unable to obtain comparable evidence by other reasonable means."[3] In addition:
 {¶ 22} "`In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. This standard of materiality applies regardless of whether the evidence is specifically, generally or not at all requested by the defense.'"[4]
 {¶ 23} If evidence does not meet the materially exculpatory standard, it is considered "potentially useful" evidence. "`Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.'"[5]
 {¶ 24} We must determine whether the statement was material to appellant's guilt, or "materially exculpatory."
 {¶ 25} One possible way for the statement to be exculpatory in nature was for the defense to use the statement to impeach the victim's testimony to show that she was not credible, pursuant to Evid.R. 607. We agree with appellant that it is difficult to prove whether the statement was exculpatory without the benefit of reviewing the statement itself, since it no longer exists. However, both Detective Deutsch and the victim acknowledged that the victim made a false statement, stating that she was dragged into the house when, in fact, she entered the house willingly. In addition, the victim admitted that she left out any mention of the coin toss in her initial statement. There was evidence presented to the jury that the victim lied in her initial statement and omitted a relevant fact. Accordingly, the defense was able to impeach the victim's testimony and challenge her credibility.
 {¶ 26} We will now examine the exculpatory nature of the statement itself. Based on the testimony of the victim and Detective Deutsch, the initial statement contained false information and an omission that suggested a "stronger" case for rape, in that the victim attempted to show that she had absolutely nothing to do with the circumstances that led to the sexual activity. There is no indication that the victim made any comments in the first statement to suggest that the sexual activity was consensual, or that appellant did not commit the crimes in question. Thus, the statement would not be purely exculpatory in this regard.
 {¶ 27} The initial statement was not exculpatory. We cannot conclude that the results of the trial would have been different had the original statement been properly preserved. Moreover, in his appellate brief, appellant asserts the original statement fell within the definition of "`potentially useful evidence,'" as set forth in Arizona v. Youngblood. We agree.
 {¶ 28} Having determined that the initial statement fell into the category of "potentially useful" evidence, we must determine whether Detective Deutsch acted in bad faith by failing to preserve the statement. "Bad faith implies something more than bad judgment or negligence; "`it imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."'"[6]
 {¶ 29} Detective Deutsch asked the victim to write down what happened on the night in question during her family trip and bring the "notes" with her to the interview. When questioning the victim, the detective determined that the victim was not entirely forthcoming in her notes and had included false information in them. After realizing that the statement was not entirely accurate, the detective discarded the statement and had the victim fill out a formal police statement. A review of Detective Deutsch's testimony indicates that she discarded the initial statement because the victim had made an accurate, formal police statement. There is no evidence that Detective Deutsch destroyed the initial statement in an attempt to prevent the defense from reviewing it. While the better practice would have been to preserve the initial statement, we cannot say that Detective Deutsch acted in bad faith when she discarded the statement.
 {¶ 30} The initial statement was not materially exculpatory. In addition, appellant has not demonstrated that the state acted in bad faith by failing to preserve this potentially useful evidence. Thus, appellant's first assignment of error is without merit.
 {¶ 31} Appellant's second assignment of error is:
 {¶ 32} "The trial court erred to the prejudice of the defendant-appellant when it denied the defendant-appellant's motion for a joint trial."
 {¶ 33} The Supreme Court of Ohio has held that a trial court's decision regarding the joining of co-defendants' trials will not be reversed absent a showing of an abuse of discretion.[7] The term "abuse of discretion" implies that the court's decision was arbitrary, unreasonable, or unconscionable.[8]
 {¶ 34} Appellant claims the trial court abused its discretion by denying the motion for a joint trial. We disagree.
 {¶ 35} The trial court found that a joint trial could cause confusion to arise among the jury. The testimony at trial indicated that both appellant and his brother Howard engaged in sexual activity with the victim. In addition, appellant's statement indicated his defense was that the sexual acts were consensual. Presumably, Howard might have used a similar defense. If a joint trial were held, the possibility existed for confusion to arise among the jury members as they weighed the evidence to determine which acts were consensual.
 {¶ 36} Additionally, the motion for a joint trial was filed on October 10, 2001. In its judgment entry denying the motion, the trial court noted that appellant's trial was scheduled to begin the following Monday, October 15, 2001. Presumably, had the motion been granted, the trial court would have had to continue appellant's trial to allow the parties adequate preparation time. Thus, in addition to a motion for a joint trial, the motion was, in effect, a motion to continue. We note that a decision regarding a continuance is also left to the sound discretion of the trial court and should not be reversed unless there is an abuse of that discretion.[9] One of the factors a trial court may consider when ruling on a motion to continue is its "right to control its own docket and the public's interest in the prompt and efficient dispatch of justice."[10]
 {¶ 37} The trial court found that a joint trial could cause confusion among the jury. In addition, the trial court noted the motion was filed on the eve of trial. Taken together, these were valid reasons for denying the motion. Accordingly, the trial court did not abuse its discretion by denying appellant's motion for a joint trial.
 {¶ 38} Even if we were to find that the trial court erred by denying appellant's motion for a joint trial, such error would be harmless. Appellant argues that he was denied the benefit of the jury hearing evidence regarding the incidents involving both himself and Howard, and distinguishing between the two. However, the victim did testify to the events regarding Howard. Defense counsel did not object to this testimony. Thus, the jury heard evidence regarding both incidents. Moreover, appellant's trial counsel distinguished the behavior of the two individuals during his closing argument. Finally, the trial court specifically instructed the jury that they had to find that appellant committed each of the crimes.
 {¶ 39} Appellant's second assignment of error is without merit.
 {¶ 40} Appellant's third assignment of error is:
 {¶ 41} "The trial court erred to the prejudice of the defendant-appellant when it allowed the state to introduce the defendant-appellant's statement regarding digital penetration into evidence without corpus delicti having first been established."
 {¶ 42} Appellant asserts that there was no evidence of digital penetration presented by the state prior to the state introducing his statement. We disagree. The victim testified that appellant rubbed her vagina. She stated that she did not know if he digitally penetrated her.
 {¶ 43} Detective Deutsch testified regarding appellant's statement. When she mentioned that appellant stated he digitally penetrated the victim, defense counsel objected, arguing that the state had not met the corpus delicti standard for the introduction of appellant's statement. During a side bar conference, the trial court concluded that rubbing the vagina is the equivalent of penetrating the vagina. Thereafter, the court permitted the introduction of appellant's statement.
 {¶ 44} Corpus delicti has two elements, "the act and the criminal agency of the act."[11] Corpus delicti must be established by evidence outside of a defendant's out-of-court confession, before the confession can be admitted.[12]
However, corpus delicti only requires "`some evidence outside of the confession that tends to prove some material element of the crime charged.'"[13] Finally, "[i]n light of the myriad procedural protections granted defendants in modern criminal practice, however, `the corpus delicti rule is supported by few practical or social policy considerations.' [The Supreme Court of Ohio] has refused to apply it `with a dogmatic vengeance.'"[14]
 {¶ 45} The indictment alleged that appellant committed unlawful sexual conduct with a minor, in violation of R.C.2907.04(A), which states:
 {¶ 46} "(A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard."
 {¶ 47} "`Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. * * *"[15]
 {¶ 48} "`Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."[16]
 {¶ 49} We do not agree with the trial court's conclusion that rubbing the vagina is the equivalent of penetrating the vagina. Rubbing the vagina would generally fall under the definition of sexual contact, while penetrating the vagina would constitute sexual conduct. However, while these acts are not identical, for the following reasons, we hold the victim's testimony was sufficient to meet the corpus delicti burden.
 {¶ 50} We acknowledge that other courts have held that very minimal corroborative evidence needs to be introduced to meet the corpus delicti standard. In State v. Neely, the Twelfth Appellate District held that a young child's change in behavior, in that she was acting out in a sexual nature, after she and her mother moved into the defendant's residence, was adequate evidence to meet the corpus delicti standard for introducing the defendant's confession relating to the crimes of rape and gross sexual imposition.[17] In State v. Jennings, the Second Appellate District held that a young child's statements, made to a doctor, that the defendant touched her private and she touched his private, was sufficient evidence to meet the corpus delicti standard for rape.[18]
 {¶ 51} The corroborative evidence presented in State v.Neely and State v. Jennings, standing alone, does not meet the definition of sexual conduct. However, the courts ruled that this evidence was sufficient to meet the corpus delicti standard, permitting the introduction of the defendants' confessions.
 {¶ 52} Appellant cites State v. Stieber in support of his argument.[19] In Stieber, the Sixth Appellate District affirmed the trial court's ruling that the state had not met its burden of presenting sufficient evidence relating to a specific count of the indictment to introduce the defendant's confession in relation to that count. Specifically, the state provided absolutely no evidence regarding the alleged crime that occurred in 1991.[20] This factual scenario is readily distinguishable from the case at bar, where the victim testified regarding the sexual activity that occurred on the night in question.
 {¶ 53} In the case at bar, the victim's testimony, standing alone, was insufficient to prove that appellant engaged in sexual conduct with her regarding the insertion of his finger into her vagina. However, the state was not required to prove every element of the offense prior to introducing appellant's statement.[21] The victim's testimony indicates that he was rubbing her vagina with his hand when she did not have any clothes on. We note that penetration is deemed to have occurred if there was the insertion of appellant's finger into the victim's vagina, "however slight" the insertion was.[22]
While rubbing the vagina and penetration are two distinct acts, "rubbing the vagina" could be the precursor to "penetration" if there is any insertion, whatsoever, of the finger(s).
 {¶ 54} The state, through the testimony of the victim, presented evidence that appellant's hand was on the victim's vagina. Standing alone, this evidence meets the corpus delicti standard for the state to introduce appellant's confession relating to the unlawful sexual conduct with a minor charge pertaining to digital penetration.
 {¶ 55} Appellant's third assignment of error is without merit.
 {¶ 56} Appellant's fourth assignment of error is:
 {¶ 57} "The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29(A)."
 {¶ 58} A court shall grant a motion for acquittal if the evidence presented is insufficient to sustain a conviction.[23] When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[24]
 {¶ 59} Initially, appellant contends that the state failed to prove that he compelled the victim to submit by force or threat of force.
 {¶ 60} Rape is codified as R.C. 2907.02, which provides, in part:
 {¶ 61} "(A)(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 62} "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of a certain nature."[25]
 {¶ 63} Force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."[26]
 {¶ 64} The following is an excerpt from the victim's testimony:
 {¶ 65} "Q: [by the assistant prosecutor] And when [appellant] came into the room did he say anything to you?
 {¶ 66} "A: [the victim] He just said I can't find Richie.
 {¶ 67} "Q: And did you say anything in response to him?
 {¶ 68} "A: I said oh.
 {¶ 69} "* * *
 {¶ 70} "Q: Now when he came into the room * * * can you tell us what he did after he came inside the room?
 {¶ 71} "A: He came over and just laid on top of me, he's like is it okay.
 {¶ 72} "Q: And did you say something in response to that?
 {¶ 73} "A: I said uh-uh.
 {¶ 74} "Q: And did you say it loud for him?
 {¶ 75} "A: Uh-huh.
 {¶ 76} "Q: Enough for him to hear?
 {¶ 77} "A: (Witness nodding affirmatively.)
 {¶ 78} "Q: And did you say anything else at the time?
 {¶ 79} "A: No.
 {¶ 80} "Q: And after you said uh-uh meaning no, what did he do?
 {¶ 81} "A: He just started to do the same thing the other cousin did.
 {¶ 82} "Q: * * * [w]hen he came into the room I believe you indicated that you remember starting to put your clothes on, did you already have your clothes on?
 {¶ 83} "A: I had started to pull them up but I didn't have them up.
 {¶ 84} "Q: And when you said you started to pull them up and he came over what happened to your clothes?
 {¶ 85} "A: They were around my knees and he just pushed them down.
 {¶ 86} "Q: He pushed them down and do you know how he was able to do that?
 {¶ 87} "A: With his hands.
 {¶ 88} "Q: And after he pushed your clothes down, were you sitting up or what were you doing?
 {¶ 89} "A: I was laying down.
 {¶ 90} "Q: And how did you end up laying down?
 {¶ 91} "A: Cause he laid down on top of me."
 {¶ 92} On cross-examination, the victim testified that appellant did not make any threats to her. Therefore, the state had to show that appellant compelled the victim to submit by force.
 {¶ 93} The victim testified that she laid down because appellant laid on top of her. This act was physical restraint. Thereafter, appellant asked the victim if it was okay. She responded "uh-uh." Although she admitted on cross-examination that her answer was very quiet, she stated on direct examination that she said "uh-uh" loud enough for appellant to hear.
 {¶ 94} The testimony of the victim indicates that she did very little, if anything, to attempt to stop the sexual acts with appellant from occurring. However, a victim is not required to prove physical resistance in a rape prosecution.[27]
 {¶ 95} We acknowledge that the evidence presented by the state to meet the element of force, when compared to other rape cases, was minimal. However, the state presented evidence showing appellant, a twenty-five-year-old male, caused the victim, a fifteen-year-old girl, to lay down by laying on top of her and, then, proceeded to have intercourse with the victim after she conveyed her lack of consent. This evidence, when viewed in a light most favorable to the prosecution, is sufficient to prove that appellant compelled the victim to submit to sexual conduct by force. Specifically, appellant physically constrained the victim by laying on top of her, continued to remain on top of her after she expressed her disinterest, and proceeded to engage in sexual intercourse with her without consent.
 {¶ 96} Appellant also asserts that the state provided insufficient evidence to show that he knew the victim was less than sixteen years old or that he was reckless in that regard. We disagree. R.C. 2907.04(A), recopied supra, prohibits sexual contact with children ages thirteen to fifteen when the offender knows the age of the victim or is reckless in that regard. Consent of the victim is not a defense under this section.
 {¶ 97} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."[28]
 {¶ 98} The victim testified that, during a telephone conversation with Richie before the incident, she spoke to appellant, and appellant asked her if she knew any other fifteen-year-olds that she could "hook him up with." Richie also testified that appellant talked to the victim on the phone.
 {¶ 99} In addition, Richie testified that appellant asked him who was in the room with his brother when he arrived home from work. Richie responded that it was the victim. Accordingly, appellant was told who was in the back room, and this was the same person he talked to on the phone. Taken together, this evidence is sufficient to show appellant knew the victim's age or, at least, was reckless in that regard.
 {¶ 100} Appellant asserts that Richie only told him the victim's first name and that there could have been two different individuals with that same first name. While such a situation was possible, the state met its burden to show that appellant was at least reckless with respect to the victim's age, since appellant engaged in sexual conduct with an individual with the same first name as an individual he knew was fifteen years old, both individuals being acquainted with Richie.
 {¶ 101} Finally, appellant asserts that the state did not provide sufficient evidence to show that appellant digitally penetrated the victim. To succeed on this argument, appellant needed to have been successful on his third assignment of error. He was not. Thus, appellant's statement was properly admitted into evidence. In his statement, appellant admitted he inserted his fingers into the victim's vagina. Therefore, the state provided sufficient evidence on this element.
 {¶ 102} On the rape count and both the unlawful sexual contact with a minor counts, the state presented evidence that, when viewed in a light most favorable to the prosecution, the jury could have found all the elements of the crimes proven beyond a reasonable doubt. Thus, the trial court did not err by denying appellant's motion for acquittal.
 {¶ 103} Appellant's fourth assignment of error is without merit.
 {¶ 104} Appellant's fifth assignment of error is:
 {¶ 105} "The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 106} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language:
 {¶ 107} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."[29]
 {¶ 108} The weight to be given to the evidence and the credibility of witnesses are primarily matters for the jury to decide.[30]
 {¶ 109} The victim testified that she was fifteen years old when these sexual acts occurred. Further, she testified that the intercourse was not consensual. The defense did not present evidence at the trial. However, appellant's statement was admitted into evidence. Therein, he admits to engaging in sexual conduct with the victim by means of intercourse and digital penetration.
 {¶ 110} Pertaining to the rape conviction, both appellant and the victim acknowledge that intercourse occurred. Appellant stated that it was consensual, while the victim testified that it was not. Appellant notes that the victim lied and omitted facts in her initial statements. However, the fact that the victim had made false statements and omitted material from her initial statements was brought to the jury's attention during the trial. Thereafter, the jury was in the best position to judge the credibility of the victim when she was on the witness stand We cannot say the jury lost its way or created a manifest miscarriage of justice when it chose to believe the victim's testimony that the intercourse was not consensual.
 {¶ 111} Regarding the unlawful sexual contact with a minor convictions, appellant admitted in his statement that he had intercourse with the victim and digitally penetrated her. Thus, the only contested issue for the jury to decide is whether appellant knew the victim was fifteen years old or was reckless with regard to her age. In our analysis of appellant's fourth assignment of error, we determined the state presented sufficient evidence to sustain a conviction on these counts. In his statement, appellant did not make any comments regarding his knowledge of the victim's age. Again, we cannot say the jury lost its way or created a manifest miscarriage of justice by believing the state's witnesses regarding appellant's knowledge of the victim's age.
 {¶ 112} Appellant's convictions are not against the manifest weight of the evidence.
 {¶ 113} Appellant's fifth assignment of error is without merit.
 {¶ 114} The judgment of the trial court is affirmed.
Judgment affirmed.
Ford, P.J., and Rice, J., concur.
[1] State v. Treesh (2001), 90 Ohio St.3d 460, 475, quotingBrady v. Maryland (1963), 373 U.S. 83, 87.
[2] State v. Benson, 152 Ohio App.3d 495, 2003-Ohio-1944, at ¶ 10, citing California v. Trombetta (1984), 467 U.S. 479,488-489; Arizona v. Youngblood (1988), 488 U.S. 51, 57-58;State v. Benton (2000), 136 Ohio App.3d 801, 805; and State v.Lewis (1990), 70 Ohio App.3d 624, 633-634.
[3] State v. Benton, 136 Ohio App.3d at 805; citingCalifornia v. Trombetta, 467 U.S. at 489.
[4] State v. Treesh, 90 Ohio St.3d at 475, quoting State v.Johnston (1988), 39 Ohio St.3d 48, paragraph five of the syllabus.
[5] State v. Treesh, 90 Ohio St.3d at 475, quoting Arizonav. Youngblood, 488 U.S. at 58.
[6] State v. Benson, supra, at ¶ 14, quoting State v.Buhrman (Sept. 12, 1997), 2d Dist. No. 96 CA 145, 1997 Ohio App. LEXIS 4093, quoting Slater v. Motorists Mut. Ins. Co. (1962),174 Ohio St. 148, overruled on other grounds Zoppo v. HomesteadIns. Co. (1994), 71 Ohio St.3d 552. See, also, State v. Wolf,154 Ohio App.3d 293, 2003-Ohio-4885, at ¶ 14, quoting Hoskins v.Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272, 276.
[7] State v. Brown (1988), 38 Ohio St.3d 305, 309.
[8] State v. Adams (1980), 62 Ohio St.2d 151, 157-158.
[9] (Citations omitted.) State v. Unger (1981),67 Ohio St.2d 65, 67.
[10] Id.
[11] State v. Van Hook (1988), 39 Ohio St.3d 256, 261, citingState v. Maranda (1916), 94 Ohio St. 364.
[12] Id.
[13] (Emphasis in original.) Id., quoting State v. Maranda,
supra, at paragraph two of the syllabus.
[14] Id., quoting State v. Edwards (1976), 49 Ohio St.2d 31,35-36.
[15] R.C. 2907.01(A).
[16] R.C. 2907.01(B).
[17] State v. Neely, 12th Dist. No. CA2002-02-002, 2002-Ohio-7146, at ¶ 30-31.
[18] State v. Jennings, 2d Dist. No. 2002 CA 78, 2003-Ohio-4429, at ¶ 26.
[19] State v. Stieber (Oct. 27, 1995), 6th Dist. No. H-95-017, 1995 Ohio App. LEXIS 4711.
[20] Id. at *5-6.
[21] State v. Van Hook, 39 Ohio St.3d at 261-262, citingState v. Maranda, 94 Ohio St. at 370-371.
[22] See R.C. 2907.01(A).
[23] Crim.R. 29(A).
[24] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979),443 U.S. 307.
[25] R.C. 2901.22(A).
[26] R.C. 2901.01(A)(1).
[27] R.C. 2907.02(C).
[28] R.C. 2901.22(C).
[29] (Citations omitted.) State v. Thompkins (1997),78 Ohio St.3d 380, 387.
[30] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.