The STATE of Ohio, Appellee,

v.

WOLF, Appellant.

[Cite as *State v. Wolf,* 154 Ohio App.3d 293, 2003-Ohio-4885.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 02–BE–61.

Decided Sept. 11, 2003.

Frank Pierce, Belmont County Prosecuting Attorney, and Thomas M. Ryncarz, Assistant Prosecuting Attorney, for appellee.

James L. Nichelson, for appellant.

GENE DONOFRIO, Judge.

{¶ 1} Defendant-appellant, Michael P. Wolf, appeals his conviction in the Belmont County Court, Eastern Division, after pleading no contest to driving under the influence ("DUI") in violation of R.C. 4511.19(A)(1) and (A)(7).

{¶ 2} On March 3, 2002, appellant was charged with DUI in violation of R.C. 4511.19(A)(1) and (A)(4), failing to drive in marked lanes in violation of R.C. 4511.33, and failing to wear a safety belt in violation of R.C. 4513.263. The arresting officer, Sgt. Jeffrey Bernard of the Ohio State Highway Patrol, had a video camera in his patrol car that recorded appellant's erratic driving and the arrest.

{¶ 3} Appellant pleaded not guilty, and a pretrial conference was held on April 4, 2002. Sgt. Bernard brought a videotape to the pretrial conference. Upon viewing the tape, it was evident that the traffic stop involving appellant was not on it. Believing that this was simply the wrong videotape, the parties agreed to continue the pretrial conference to May 1, 2002. At the next pretrial conference, plaintiff-appellee, state of Ohio, explained to appellant's counsel that the video-tape that was produced at the previous pretrial conference was in fact the right videotape but that appellant's stop had been accidentally taped over by another stop and was unavailable. The day of appellant's stop, Sgt. Bernard showed the tape to two fellow officers. When he returned the videotape to his cruiser, it rewound to the beginning and started taping over the portion related to appellant's arrest.

{¶ 4} On May 3, 2002, appellant filed a motion to preserve evidence—specifically, the videotape depicting appellant's erratic driving and the arrest. Appellant also filed a motion to dismiss based on the unavailability of the videotape. Appellee filed a response to both motions, and the matter was submitted to the trial court on the written motions. On July 12, 2002, the court overruled both motions, concluding that the videotape had been accidentally taped over and that appellee had not acted in bad faith or purposely destroyed evidence. The court later overruled an unrelated motion to suppress filed by appellant.

{¶ 5} On October 10, 2002, appellant pleaded no contest to DUI, and the remaining charges were dismissed at the request of appellee. This appeal followed.

{¶ 6} Appellant's sole assignment of error states:

{¶ 7} "The court erred, to the prejudice of the appellant, in failing to order the preservation of the video tape of the arrest, and failing to dismiss when it was destroyed."

{¶ 8} Relying primarily on *State v. Benton* (2000), 136 Ohio App.3d 801, 737 N.E.2d 1046, and *Columbus v. Forest* (1987), 36 Ohio App.3d 169, 522 N.E.2d 52, appellant argues that the trial court erred by failing to order preservation of the videotape of the stop and failing to grant his motion to dismiss when appellee failed to produce it.

{¶ 9} In *Arizona v. Youngblood* (1988), 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281, the United States Supreme Court addressed the issue of whether a criminal defendant is denied due process of law by the state's failure to preserve evidence. The court stated:

{¶ 10} "The Due Process Clause of the Fourteenth Amendment, as interpreted in [*Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215], makes the good or bad faith of the State irrelevant when the State fails to disclose to the

defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. * * * We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 57–58, 109 S.Ct. 333, 102 L.Ed.2d 281.

{¶ 11} In *Columbus v. Forest* (1987), 36 Ohio App.3d 169, 522 N.E.2d 52, the Tenth District Court of Appeals held that where the state breaches its duty to respond in good faith to a defense request to preserve evidence, the appropriate remedy is to shift to the state the burden of proof as to the exculpatory value of the evidence. Id. at 173, 522 N.E.2d 52. See, also, *State v. Benton* (2000), 136 Ohio App.3d 801, 737 N.E.2d 1046 (adopting the *Forest* approach).

{¶ 12} Research reveals no instances of this court's adoption of the burden-shifting rule espoused in *Forest*. Moreover, the Tenth District Court of Appeals has subsequently limited the holding of *Forest* and emphasized the prerequisite of a demonstration of bad faith on the part of prosecutors or law enforcement officials:

{¶ 13} "The burden-shifting remedy of *Forest* has limited application, and was applied in *Forest* where the state failed to respond in good faith to a defendant's request to preserve evidence. The record herein contains nothing suggesting defendant requested the state to preserve the slides at issue. In the final analysis, absent the showing of bad faith, the state's failure to preserve the slides at issue is not a denial of due process of law." *State v. Groce* (1991), 72 Ohio App.3d 399, 402, 594 N.E.2d 997.

{¶ 14} The term "bad faith" generally implies something more than bad judgment or negligence. "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." (Internal quotation marks and citation omitted.) *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 276, 6 OBR 337, 452 N.E.2d 1315.

{¶ 15} In this case, appellant presented no evidence of bad faith. Rather, the evidence demonstrates that appellant's stop had been accidentally taped over and was unavailable. The day of appellant's stop, Sgt. Bernard showed the tape to

two fellow officers. When he returned the videotape to his cruiser, it rewound to the beginning and started taping over the portion related to appellant's arrest.

{¶ 16} Furthermore, appellant never filed a motion to preserve the evidence until after the videotape was brought to the pretrial conference and it was determined that the tape had been accidentally taped over. Nor did appellant ever file a discovery request.

{¶ 17} Accordingly, appellant's sole assignment is without merit.

{¶ 18} The judgment of the trial court is hereby affirmed.

Judgment affirmed.

VUKOVICH and WAITE, JJ., concur.