DECISION AND JUDGMENT ENTRY {¶ 1} Appellant, Eric Babos, appeals a Lucas County Court of Common Pleas decision denying his motion for a new trial. For the reasons that follow, we affirm the trial court's judgment.
 {¶ 2} On December 29, 2004, appellant was indicted for the murder of John Riebe. A jury trial commenced on August 1, 2005. Fourteen year-old Jamie Riebe testified that on December 15, 2004, at approximately 3:15 p.m. she and her younger sister, Nicole, arrived home from school and found their father, John Riebe, dead on the *Page 2 
living room floor. He had been shot. While police were investigating the crime scene, appellant, Riebe's friend and assistant, called the house. Jamie testified that she spoke to appellant who insisted on talking to her dad who owed him money. Jamie testified that appellant sounded angry. She told appellant that there was something wrong with her dad and that he could not come to the phone. When the police asked Jamie who might have shot her father she named appellant and J.R., a man she described as her father's drug dealer.
 {¶ 3} Daniel Boyle testified that he is the manager of the A-1 Heating Company where John Riebe sometimes worked on contract. In December of 2004, Riebe performed some installations for the company. Riebe employed appellant as his assistant. On December 15, 2004, at approximately 3:00 p.m., Riebe called Boyle at his office to inquire about payment due to him for a finished project. Boyle told Riebe his check was ready. Boyle testified that a couple of minutes later, appellant called and stated "I want my fucking money." Boyle explained to appellant that it was Riebe's responsibility to pay him and that only Riebe could pick up the check. Phone records introduced into evidence showed that both calls were made from the home phone of John Riebe.
 {¶ 4} Robert J. Pfeifer testified that he owns the A-1 Heating company. On December 15, 2004, the company owed Riebe $800 for work performed. Pfeifer testified that he was in the office when the phone rang again minutes after appellant's call to Boyle. Pfeifer picked up the receiver and put the phone on hold without speaking to the caller. Subsequently, Pfeifer answered a call on another line. The caller identified himself as "Eric" and demanded money he claimed he was owed. Pfeifer told the caller *Page 3 
that A-1 did not owe him any money; rather, Riebe owed him money. Pfeifer asked the caller to have Riebe call A-1. At approximately 4:00 p.m., "Eric" called again wanting to pick up Riebe's check. He told Pfeifer that Riebe could not pick it up because he was in the hospital. Pfeifer testified that he did not believe "Eric" was telling the truth and that he refused to release Riebe's check to anyone other than Riebe.
 {¶ 5} Lisa Richman, Riebe's estranged wife, testified that on December 15, 2004 she received two phone messages from Riebe. At 2:58 p.m., Riebe left her a message asking her to pick up his check from A-1 heating. One minute later he left another message asking her to hurry and call him back. He stated "[I] got someone here waiting for his money." Richman testified that Riebe sounded panicked.
 {¶ 6} Daniel Davison, a forensic scientist with the Ohio Bureau of Criminal Identification and Investigation, testified that he conducted tests for gunshot residue on a shirt owned by appellant. Appellant was seen wearing the shirt on December 15 and into the early morning hours of December 16. Davison tested an area around the cuffs and sleeves. He found gunshot residue on the left sleeve.
 {¶ 7} Detective Robert Colwell with the Sylvania Township Police Department testified that he was called to the Riebe residence on December 15, 2004. While investigating, he answered Riebe's phone. The caller identified himself as Jason Rahman, said he knew Riebe and said his uncle, appellant, had information about someone that had threatened Riebe with a handgun. Rahman asked Colwell if he wanted to talk to appellant. In the early morning hours of December 16, appellant voluntarily came to the Sylvania Township Police Station. He stated that Riebe had a party at his house around *Page 4 
December 10, 2004. Riebe, appellant and four other people were present when, as appellant described, a large black man entered the house brandishing a handgun. Appellant identified the man as "J.R." Colwell testified that later that morning, as he pressed appellant for more details, appellant recanted the story. In addition, the other individuals present at the party denied ever seeing a gun. Appellant told Colwell that between 3:00 p.m. and 3:30 p.m. on December 15, he was at his brother's house working on some remodeling projects.
 {¶ 8} On August 5, 2005, the jury found appellant guilty of murder in violation of R.C. 2903.02(B). Appellant filed a motion for a new trial which was denied on November 18, 2005. He was sentenced 18 years to life. Appellant now appeals setting forth the following assignment of error.
 {¶ 9} "The trial court erred in dismissing the appellant's motions for new trial."
 {¶ 10} Crim.R. 33 states in pertinent part:
 {¶ 11} "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 {¶ 12} "(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;
 {¶ 13} "(2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;
 {¶ 14} "* * * *Page 5 
 {¶ 15} "(6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses."
 {¶ 16} An appellate court will not reverse a trial court's denial of a motion for new trial absent an abuse of that discretion. State v.Hawkins (1993), 66 Ohio St.3d 339, 350. An abuse of discretion is more than a mere error in judgment, it implies that a court's ruling is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 17} Appellant first contends he was entitled to a new trial due to an irregularity in the proceedings. Specifically, Detective Colwell testified that in the early morning hours of December 16, while appellant was at the station for his interview, he was arrested "on a different charge." Appellant's counsel immediately objected and moved for a mistrial. The trial judge sustained the objection and ordered Colwell's statement to be stricken as unresponsive.
 {¶ 18} This remark by Colwell was a brief, isolated incident that was not repeated during the trial. The trial court struck the remark and immediately instructed the jury not *Page 6 
to consider it. A jury is presumed to follow the trial court's curative instructions. State v. Loza (1994), 71 Ohio St.3d 61, 75. Given the other evidence introduced at trial which supports the jury's guilty verdict, we cannot say that appellant was denied a fair trial because of Colwell's remark.
 {¶ 19} Appellant next contends that he was denied his right to a fair trial when the prosecution failed to disclose a videotaped interview with one of Riebe's drug suppliers. Colwell testified that in a video taped interview, Clarence Evans told police that Riebe owed him money. He denied being at Riebe's house on December 15, 2004. Appellant's counsel moved for a mistrial on the basis that he was never provided a copy of the video tape which was potentially, exculpatory evidence.
 {¶ 20} The state's failure to preserve materially exculpatory evidence violates a defendant's due process rights under the Fourteenth Amendment to the United States Constitution. See Arizona v. Youngblood (1988),488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281; California v. Trombetta (1984),467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413. The burden rests with the defendant to prove that the evidence in question was materially exculpatory. See State v. Jackson (1991), 57 Ohio St.3d 29, 33. Such evidence is deemed materially exculpatory if "there is a `reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." State v.Johnston (1988), 39 Ohio St.3d 48, 61, citing United States v.Bagley (1985), 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481. "A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." Jackson, 57 Ohio St.3d at 33. *Page 7 
 {¶ 21} In contrast, evidence is not materially exculpatory if it is merely potentially useful. See State v. Lewis (1990),70 Ohio App.3d 624. Potentially useful evidence indicates that the evidence may or may not have incriminated the defendant. See id. at 634. The failure to preserve evidence that by its nature or subject is merely potentially useful violates a defendant's due process rights only if the police or prosecution acted in bad faith. Arizona v. Youngblood,488 U.S. at 57-58, 109 S.Ct. 333, 102 L.Ed.2d 281; State v. Keith (1997),79 Ohio St.3d 514, State v. Combs, 5th Dist. No. 03CA-C-12-073, 2004-Ohio-6574,¶ 16. The "term `bad faith' generally implies something more than bad judgment or negligence. `It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.'"State v. Wolf, 154 Ohio App.3d 293, 2003-Ohio-4885, ¶ 14, quotingHoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272, 276.
 {¶ 22} In the present case, a hearing on appellant's motion for a mistrial was held in chambers. The prosecutor testified that he had never seen the video tape and that was why appellant's counsel had never seen the video tape. Detective Colwell testified that he thought he had given all of the evidence to the prosecutor but he could not say for sure whether or not the prosecutor had gotten a copy of Evan's interview. Detective Slaman of the Sylvania Township Police Department testified that his department did not give the Lucas County Prosecutor's office a video taped copy of every interview they conducted in relation to the Riebe murder investigation. He could not specifically confirm that the prosecutor received a copy of Evan's interview. Given this testimony, we find no reason *Page 8 
for the trial judge to have doubted the prosecutor's word that he did not know about the video tape and no evidence of bad faith.
 {¶ 23} Appellant next contends that the state failed to disclose evidence that Thomas Jackson may have murdered Riebe. According to appellant, Lawrence Jackson, Thomas Jackson's brother, told two people that Thomas Jackson was involved in Riebe's murder. Detective Colwell testified that during the investigation of Riebe's murder, Mike Sterling called him and said that Thomas Jackson may have committed the murder. Sterling said that he got the information from Thomas Jackson's brother, Lawrence. Sterling told Colwell that an ax was used to commit the murder and that the murder occurred outside. Because this information did not conform to the facts in the case, Colwell testified he did not consider it exculpatory. Lawrence Jackson was called to testify in appellant's hearing on his motion for a new trial. He explained that he did not get along well with his brother. He admitted that he told two people that his brother was involved in the Riebe murder and he testified that it was a lie. He further testified "[I] was just being spiteful to my brother" and that he was angry at his brother at the time because he believed his brother was sleeping with his ex-girlfriend. Based on the foregoing testimony, the trial court did not err in denying appellant's motion for a new trial based on undisclosed evidence.
 {¶ 24} Finally, appellant contends that the state failed disclose information implicating Valynn Rodgers, also known as "J.R.", in the murder of Riebe. Detective Slaman testified at appellant's hearing on his motion for a new trial. In January 2005, another detective called him and suggested he talk to Vincent Williams about the murder *Page 9 
of Riebe. Slaman interviewed Williams at the Lucas County Jail where Williams was incarcerated. Slaman testified that Williams knew none of the details of Riebe's murder and, more importantly, he never said that Valynn Rodgers killed Riebe. In Slaman's opinion, William's only motivation in implicating Rodgers was to secure a lesser jail sentence for himself. Slaman testified that even though police knew Rodgers sold drugs to Riebe and that he had been to Riebe's home, he was excluded as a suspect early on in the investigation because his alibi was confirmed.
 {¶ 25} In sum, we do not find that the police or that the prosecution intentionally withheld evidence that would have changed the result of appellant's trial. Accordingly, the trial court did not abuse its discretion in denying appellant's motion for a new trial and appellant's assignment of error is found not well-taken.
 {¶ 26} On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT AFFIRMED. *Page 10 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Arlene Singer, J. JUDGE
Thomas J. Osowik, J. JUDGE
George M. Glasser, J. JUDGE
 CONCUR. *Page 1