OPINION
{¶ 1} Defendant-appellant, George P. Lothes, III, appeals the denial of his motion to suppress and his subsequent conviction for Operating a Vehicle Under the Influence of Alcohol. For the reasons that follow, we affirm the judgment of the lower court.
 {¶ 2} Just before midnight on February 11, 2006, Sergeant Dunbar of the Ohio State Highway Patrol, was traveling westbound on State Route 59 near the City of Kent, *Page 2 
in Portage County, Ohio. When Sergeant Dunbar approached the Kent City limits, he decided to turn around in the parking lot of the United Methodist Church. As Sergeant Dunbar waited to reenter the roadway, he observed a white Ford pickup truck, driven by Lothes, traveling eastbound without its headlights illuminated. After traffic passed, Dunbar began following the truck eastbound toward Ravenna for a distance of approximately half a mile.
 {¶ 3} Dunbar caught up to Lothes' truck in the vicinity of the intersection of State Route 59 and Sixth Avenue, at which point, Lothes made a left hand turn onto Sixth and into the parking lot of the Discount Drug Mart store located at the corner of Route 59 and Sixth. Sergeant Dunbar activated his overhead lights just as Lothes pulled into a parking space in front of the store and pulled up behind the truck, on the passenger side, almost perpendicular to the rear of Lothes' vehicle.
 {¶ 4} Approaching the vehicle, Sergeant Dunbar conducted a traffic stop, informing Lothes that he had observed him drive past without his headlights on. Sergeant Dunbar asked where Lothes was going, and Lothes responded that he was "taking his friend back to his vehicle." Sergeant Dunbar then asked if his friend's vehicle was parked in the parking lot, and he said no.
 {¶ 5} As they were speaking, Sergeant Dunbar noticed that Lothes was slurring his speech, and that there was a "moderate" odor of alcohol emanating from the cab of the vehicle. Sergeant Dunbar asked Lothes if he had anything to drink that evening, and Lothes responded that he had "three or four" alcoholic beverages.
 {¶ 6} Sergeant Dunbar then asked Lothes to exit the cab of the vehicle to perform standardized sobriety tests, which included the one-legged stand test, followed *Page 3 
by the walk-and-turn test, and finally, the Horizontal Gaze Nystagmus (HGN) test.[1] As he was conducting the tests, Sergeant Dunbar again noticed the odor of alcohol on Lothes' person.
 {¶ 7} Based upon the results of these tests and his observations, Lothes was arrested and charged with Operating a Vehicle while Under the Influence, in violation of R.C. 4511.19. Sergeant Dunbar also cited Lothes for Operating a Vehicle without Lighted Lights, a violation of R.C. 4513.03.
 {¶ 8} Lothes was given a Miranda warning. Lothes later volunteered that he and his friend had been returning from Ray's, in Kent that evening. When initially asked to take a breath test for alcohol, Lothes refused, but he subsequently agreed to submit to testing.
 {¶ 9} Lothes filed a motion to suppress with the trial court on March 21, 2006. The trial court held a hearing on Lothes' motion on April 27, 2006. At the hearing, Sergeant Dunbar was the only witness to testify. The trial court overruled Lothes' motion on the same day.
 {¶ 10} Following the court's denial of his suppression motion, Lothes pled no contest to the OVI charge, the remaining charges were dropped, and the trial court found him guilty. The trial court sentenced Lothes to ten days in jail, fined him $500, and suspended his license for one year. The trial court subsequently stayed execution of Lothes' sentence pending this appeal. *Page 4 
 {¶ 11} Lothes requested, and was granted leave to appeal, pursuant to App.R. 5 and raises the following assignments of error for our consideration:
 {¶ 12} "[1.] The trial court erred in denying defendant's motion to suppress when the arresting officer destroyed potentially exculpatory evidence of defendant's performance during field sobriety tests.
 {¶ 13} "[2.] The trial court erred in denying defendant's motion to suppress as the state presented no evidence that the arresting officer conducted the field sobriety tests in conformance with the requirements established by [the National Highway Traffic Safety Administration] ("NHTSA").
 {¶ 14} "[3.] Defendant-appellant was denied his constitutional right to the effective assistance of counsel."
 {¶ 15} Appellate review of a motion to suppress presents a mixed question of law and fact. State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8. The trial court acts as trier of fact at a suppression hearing and must weigh the evidence and judge the credibility of the witnesses. State v. Hill, 75 Ohio St.3d 195, 208,1996-Ohio-222. Since the trial court is in the best position to resolve the factual issues, State v. Searls (1997), 118 Ohio App.3d 739, 741, citing State v. Mills (1992), 62 Ohio St.3d 357, 366, an appellate court is bound to accept the trial court's factual determinations as long as they are supported by competent and credible evidence. Id. Once the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts. Id.
 {¶ 16} In his first assignment of error, Lothes argues that his due process rights under the Fourteenth Amendment of the United States Constitution were violated when *Page 5 
there was evidence on the record showing that the arresting officer destroyed potentially exculpatory evidence of his performance during the field sobriety tests and, therefore, the trial court erred by not granting his motion to suppress.
 {¶ 17} The State's failure to preserve materially exculpatory evidence is a violation of a defendant's due process rights under theFourteenth Amendment of the United States Constitution. See Arizona v.Youngblood (1988), 488 U.S. 51, 55-58; California v. Trombetta (1984),467 U.S. 479, 486-489. The burden rests with the defendant to prove that the evidence in question was materially exculpatory. State v.Jackson (1991), 57 Ohio St.3d 29, 33. Evidence is deemed materially exculpatory only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." State v. Johnston (1988), 39 Ohio St.3d 48, at paragraph five of the syllabus, following United States v.Bagley (1984), 473 U.S. 667, 682. "A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id.; accord Jackson, 57 Ohio St.3d at 33. If the defendant meets his burden in demonstrating that the evidence destroyed was "materially exculpatory," he need not also demonstrate that he made a request for such evidence. Johnston, 39 Ohio St.3d at 61 (citation omitted).
 {¶ 18} However, evidence is not materially exculpatory if it is merely potentially useful to the defense. State v. Lewis, (1990),70 Ohio App.3d 624, 634. "Potentially useful" evidence is evidence that may or may not have incriminated the defendant. Id. The failure to preserve evidence that is merely potentially useful violates a defendant's due process rights only if the police or prosecution acted in bad faith.State v. Keith, 79 Ohio St.3d 514, 523, 1997-Ohio-367; Lewis,70 Ohio App.3d at 634. "The term `bad *Page 6 
faith' generally implies something more than bad judgment or negligence. `It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.'" State v. Wolf, 154 Ohio App.3d 293,2003-Ohio-4885, at ¶ 14, quoting Hoskins v. Aetna Life Ins. Co. (1983),6 Ohio St.3d 272, 276.
 {¶ 19} With regard to the videotaped evidence of the traffic stop, Sergeant Dunbar testified, upon cross-examination, as follows:
 {¶ 20} "Q: Now your cruiser is equipped with video capability, correct?
 {¶ 21} "A: Yes, it is.
 {¶ 22} "Q: And that video camera, is it from basically the driver's view or from inside the car or is it on top?
 {¶ 23} "A: It's mounted on the passenger side windshield. Inside the vehicle.
 {¶ 24} "Q: And it gives you a video view or it's supposed to give you a video view of what happens in front of your car?
 {¶ 25} "* * *
 {¶ 26} "A: Right. It would have picked up the vehicle at that time.
 {¶ 27} "Q: O.K. Now, I had commented to you about getting a copy of that videotape, and aside from a little bit at the beginning when you first pull into the parking lot, the rest of the tape doesn't exist, correct?
 {¶ 28} "A: That's correct.
 {¶ 29} "Q: And that's because it was inadvertently erased?
 {¶ 30} "A: Well, it was put back in the machine. It's got an automatic lock on the video machine. It's supposed to forward up to that stop and then start again. Well, *Page 7 
apparently that malfunctioned and it got erased and it got taped over. So the only thing I have on tape is actually the initial stop.
 {¶ 31} "Q: O.K. Let's assume that hadn't happened. Would you have been able to get any of the field sobriety tests on that video if the video — or if the field sobriety tests were done at the left of defendant's vehicle?
 {¶ 32} "A: Probably not. Probably wouldn't have seen anything. Might have seen the heads, but you wouldn't have seen —
 {¶ 33} "Q: Wouldn't have seen the feet?
 {¶ 34} "A: No.
 {¶ 35} "Q: Wouldn't have seen anything else? Because it's a pickup truck.
 {¶ 36} "A: Well, yeah. And just the fact that it was back in that area over there. And the truck blocking it and the angle.
 {¶ 37} "Q: And so we're clear and the Court's clear, the sobriety tests, I believe you used one of the parking lines —
 {¶ 38} "A: Uh-huh.
 {¶ 39} "Q: — as the reference point for beginning the test, etcetera?
 {¶ 40} "A: Right.
 {¶ 41} " * * *
 {¶ 42} "Q: "I understand. So it might have been the next parking space over? Maybe in this area here?
 {¶ 43} "A: Yeah. It got started right around where the driver's seat would be. A little out in front. Did it right across from where the driver would be sitting." *Page 8 
 {¶ 44} Although Sergeant Dunbar acknowledged during his testimony that the Ohio State Highway Patrol's established protocol is to "attempt to videotape what goes on [during] the arrest," this court has previously held that a police officer has no affirmative duty under the constitution, or statutory or common law to videotape the results of field sobriety tests. State v. Delarosa, 11th Dist. No. 2003-P-0129,2005-Ohio-3399, at ¶ 49. "[A] police officer's failure to videotape [such] tests is more akin to failing to create evidence rather than destroying evidence." Id.; see also State v. Wooten, 4th Dist. No. 01CA31, 2002-Ohio-1466, 2002 Ohio App. LEXIS 1502, at *9 ("The state * * * has no constitutional duty to ensure that DUI defendants' traffic stops and sobriety tests are recorded on video or audio tape.") Accordingly, Sergeant Dunbar was not required to tape, much less maintain a copy of the tape in question.
 {¶ 45} Lothes' reliance on State v. Benton (2000),136 Ohio App.3d 801, and State v. Benson 152 Ohio App.3d 495, 2003-Ohio-1944, is misplaced. Whether viewed as the "failure to create" evidenceor the destruction of evidence, "[p]roving that lost or destroyed evidence is materially exculpatory is a daunting burden, one that has generally been placed on the defendant." Benton, 136 Ohio App.3d 801,805 (citations omitted). Both Benson and Benton stand for thelimited proposition in which the burden is shifted from the defendant to the state to show that the destroyed evidence was not materially exculpatory. Such burden shifting will only occur "where a defendant moves to have evidence preserved and that evidence is nonetheless destroyed by the state * * *." Id. (citation omitted); accordBenson, 2003-Ohio-1944, at ¶ 11 ("[W]here the defendant moves to have the evidence preserved and the state destroys the evidence, the burden shifts to the state to show the inculpatory value of the evidence."). *Page 9 
 {¶ 46} A review of the record reveals that, aside from counsel's "comment" to Sergeant Dunbar about receiving a copy of the tape, the defense never filed any formal discovery request. Cf. Benson, 2003-Ohio-1944, at ¶ 3-6 (Appellant filed a demand for discovery and a motion to disclose any videotape recording in which he was pictured, and he was informed that no such videotape existed, despite evidence that there had been a videotape.); Benton, 136 Ohio App.3d at 806
("[A]ppellant specifically requested discovery of the tape, and the state did not in good faith respond to that request").
 {¶ 47} Moreover, unlike Benson, Lothes has offered absolutely no proof that the videotaped evidence would have been materially exculpatory. 2003-Ohio-1944, at ¶ 12 (The appellate court ruled that, once the burden had shifted, the state did not meet its burden where the testimony of the defendant and two eyewitnesses "disputed much of the testimony that the [arresting] officer gave * * * relating to the stop and the DUI charge.")
 {¶ 48} Nor has Lothes shown that the videotaped evidence, had it been preserved, would have been potentially useful to his defense. Sergeant Dunbar's undisputed testimony was that he conducted the walk-and-turn and the one-legged stand tests on the driver's side of the vehicle. A review of the short portion of the videotape evidence remaining from the traffic stop of Lothes' truck corroborates Dunbar's testimony that Lothes performance of the aforementioned tests, would have been at least partially blocked from view by his vehicle. With regard to the HGN test, the undisputed testimony reveals that the test was performed with Lothes seated in the *Page 10 
front seat of the patrol car.[2] Since there is no camera which photographs the interior of the patrol vehicle, Lothes' performance on the HGN test would not have been captured.
 {¶ 49} Even if we were to assume some potential usefulness of the videotaped evidence, there is no evidence herein, unlike as inBenson and Benton, of bad faith involving the erasure of the videotape in question.
 {¶ 50} At the hearing, Sergeant Dunbar explained the operation of the videotape equipment and testified that the erasure was due to a malfunction of the "automatic lock" on the video machine. In addition, Dunbar produced the portion of the videotape that had not been erased. The defense played this portion of the videotape at the hearing. Cf.Benson 2003-Ohio-1944, at ¶ 3-5 (Defendants were informed by the state that no videotape of the arrest existed when the testimony at the suppression hearing clearly indicated this was not the case.);Benton, 136 Ohio App.3d at 804, 806 (Defendant offered evidence at trial of the police agency's videotape retention policy and proof of a specific discovery request to which the state did not respond in good faith.)
 {¶ 51} For the aforementioned reasons, we find Lothes' first assignment of error to be without merit.
 {¶ 52} In his second assignment of error, Lothes argues that the trial court erred in denying his suppression motion, since the State offered no evidence that the tests were conducted in compliance with NHTSA standards.
 {¶ 53} R.C. 4511.19(D)(4)(b)(i) provides, in relevant part, that an "officer may testify concerning the results" of a field sobriety test, provided that "it is shown by clear *Page 11 
and convincing evidence that the officer administered the test in substantial compliance with the testing standards * * * set by the national highway traffic safety administration."
 {¶ 54} Our review of the transcript reveals that, despite the fact that the state established Sergeant Dunbar was trained to conduct the field sobriety tests in a certain fashion and that he did, indeed, conduct the tests in accordance with his training, the state did not offer any evidence or testimony to show that Sergeant Dunbar's training was in accordance with NHTSA standards. See State v. Brown,166 Ohio App.3d 638, 2006-Ohio-1172, at ¶ 25 (An arresting officer's "testimony that he conducted the field sobriety tests in conformity with the manner and procedures with which he was taught is not the same as testifying that he administered the tests in substantial compliance with the guidelines set forth in the NHSTA manual"). Thus, we agree with Lothes that the state failed to meet its burden and the results of the tests should not have been admitted.
 {¶ 55} However, this is not the end to our inquiry. "In determining whether the police had probable cause to arrest an individual for DUI, we consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. * * * In making this determination, we will examine the `totality' of the facts and circumstances surrounding the arrest." State v. Homan,89 Ohio St.3d 421, 427, 2000-Ohio-212 (citations omitted). "While probable cause means more than bare suspicion, it means less than evidence that would justify conviction." State v. Hummel, 154 Ohio App.3d 123, 2003-Ohio-4602, *Page 12 
at ¶ 28. The burden is on the prosecution to prove that probable cause to arrest existed. Xenia v. Wallace (1988), 37 Ohio St.3d 216, 220.
 {¶ 56} R.C. 4511.19(D)(4)(c) provides that "[division (D)(4)(b) of this section does not limit or preclude a court, in its determination of whether the arrest of a person was supported by probable cause * * * from considering evidence or testimony that is not otherwise disallowed by division (D)(4)(b) of this section."
 {¶ 57} The aforementioned statute is a codification of the Ohio Supreme Court's holding in State v. Schmitt, 101 Ohio St.3d 79,2004-Ohio-37, which held that even if the actual test results of nonscientific standard field sobriety tests were deemed inadmissible, an officer may nevertheless testify as a lay witness, regarding observations made during a defendant's performance of these tests and the court may rely on this testimony in making its probable cause determination. Id. at ¶¶ 13-16.
 {¶ 58} In the case sub judice, Sergeant Dunbar testified that he viewed Lothes' vehicle driving without its headlights on and that, based upon his 28 years of experience as an officer, it was "not uncommon" for people who were impaired to drive without their headlights on at night. Sergeant Dunbar further testified that upon stopping and approaching Lothes' vehicle, he detected an odor of alcohol emanating from the passenger compartment, which persisted from Lothes' person when he was later asked to step out and away from the vehicle. He characterized Lothes' speech as "slurred," and stated that Lothes delayed in responding to his questioning. When questioned, Lothes volunteered information that he was returning with his friend from Ray's, a local bar and restaurant, where he had consumed "three to four" alcoholic beverages. *Page 13 
 {¶ 59} With regard to his observations during the one-legged stand test, Sergeant Dunbar testified that, even prior to the test being conducted, Lothes "lost his balance on two occasions" and "stepped off the line before he even started." Dunbar stated that Lothes had difficulty performing the test as instructed, including having to be told "on two occasions at least to raise his leg higher off the ground" and keeping his arms up, despite being told to keep them down by his sides. With regard to the walk-and-turn test, Sergeant Dunbar testified that Lothes "had difficulty keeping his feet together," where "most of his steps didn't actually touch the line," and that he took a greater number of steps than instructed.
 {¶ 60} Finally, there was evidence in the record of Lothes' refusal to submit to a breath test. Courts in Ohio have held that a trier of fact may consider a defendant's refusal to submit to a chemical test as evidence in deciding whether the defendant was under the influence of alcohol. Maumee v. Anistik, 69 Ohio St.3d 339, 1994-Ohio-157, at syllabus; see also, State v. Wargo (Oct. 31, 1997), 11th Dist. No. 96-T-5528, 1997 Ohio App. LEXIS 4846, at *10.
 {¶ 61} Based upon the totality of the circumstances, we conclude that there was sufficient competent, credible evidence to support the trial court's finding of probable cause, in the absence of the admission of the test results.
 {¶ 62} Appellant's second assignment of error is without merit.
 {¶ 63} In his third assignment of error, Lothes argues that his counsel was ineffective, since but for the ineffective performance of his counsel, the outcome of his motion to suppress would have been different. He argues that the failure of his counsel *Page 14 
to raise the "purely legal arguments" as raised in his first and second assignments of error resulted in "prejudice to the appellant." We disagree.
 {¶ 64} In State v. Bradley (1989), 42 Ohio St.3d 136, the Supreme Court of Ohio adopted the following test to determine if counsel's performance is ineffective: "[counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." Id. at paragraph two of the syllabus, following Strickland v. Washington (1984),462 U.S. 668.
 {¶ 65} "[T]he proper standard for attorney performance is that of reasonably effective assistance * * * [and] the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 462 U.S. at 687-688. A court "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689 (citation omitted).
 {¶ 66} We find nothing in the record which would indicate counsel's representation fell below an objective standard of reasonableness. Contrary to Lothes' assertions, our discussion of the first and second assignments of error reveal not merely "legal" distinctions between the cases cited and the instant matter, but factual distinctions as well. Since we found no error in the trial court's denial of Lothes' motion to suppress, based upon the evidence properly before the court, we cannot conclude that counsel's performance was ineffective.
 {¶ 67} Lothes' third assignment of error is without merit. *Page 15 
 {¶ 68} The judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.
CYNTHIA WESTCOTT RICE, P.J., MARY JANE TRAPP, J. concur.
[1] According to the undisputed testimony of Sergeant Dunbar at the suppression hearing, the One-Legged Stand Test and the Walk-and-Turn Test were performed in the parking lot, using a line from one of the parking spaces on the driver's side of Lothes' truck, which was vacant. According to this testimony, the surface of the lot was flat and dry at the time the testing was administered.
[2] Sergeant Dunbar testified that he typically conducts the HGN test while seated across from the person tested in front seat of his patrol vehicle, and that this is an accepted method of conducting the test according to his training. *Page 1