The STATE of Ohio, Appellee,

v.

PAWLOSKI, Appellant.

[Cite as *State v. Pawloski*, 188 Ohio App.3d 267, 2010-Ohio-3504.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 93374.

Decided July 29, 2010.

268

William D. Mason, Cuyahoga County Prosecuting Attorney, and Joseph C. Patituce, Assistant Prosecuting Attorney, for appellee.

Lawrence J. Kramer Jr., for appellant.

SEAN C. GALLAGHER, Administrative Judge.

{¶ 1} Appellant, Edward Pawloski, appeals from the judgment of the Cuyahoga County Court of Common Pleas. For the reasons stated, we affirm in part and reverse and vacate in part.

{¶ 2} On May 29, 2008, a Cuyahoga County grand jury indicted Pawloski on two counts of theft and one count of breaking and entering. On March 25, 2009, the matter was tried to a jury.

{¶ 3} The state presented three witnesses. Gary Stinnett, the owner of Royalton Automotive, in North Royalton, testified that on the afternoon of March 27, 2008, Pawloski brought his 1995 Buick LeSabre into Stinnett's automotive shop because its brakes had failed, rendering the vehicle inoperable. Stinnett drove Pawloski home and told him he would look at the car the next day. Stinnett testified he called Pawloski on March 28 and told him what repairs were needed but also told him that the cost of the work "was approaching" the value of the car. According to Stinnett, Pawloski gave him phone authorization to repair the brakes. A handwritten estimate for the work showed a notation that an oral estimate had been given; there was also a handwritten note on the estimate worksheet that said, "Phone auth. 3–28–08 10:42 am." Stinnett stated that his mechanics performed the work on Pawloski's car, using some used parts in order to save Pawloski money.

{¶ 4} Stinnett testified that on Saturday, March 29, when the repairs were completed, Stinnett's receptionist contacted Pawloski to let him know that the car was repaired and ready to be picked up. The cost of the repairs, including parts and services, was $1,062. According to Stinnett, Pawloski did not come into the shop to pay for and pick up his car that morning. However, later that day, one of Stinnett's employees noticed Pawloski's car was missing from the lot; Stinnett thought the car might have been stolen. Stinnett testified that he reviewed his company's security videotape in which he saw an unidentified car enter his lot and Pawloski exit that vehicle. Stinnett testified that on the videotape, he saw Pawloski get into his 1995 LeSabre, which had been repaired, and drive away. At no time did Pawloski enter the shop's office and pay for the repairs or attempt to speak to anyone at Royalton Automotive.

{¶ 5} Stinnett testified that he attempted to reach Pawloski several times that day with regard to payment for the repairs. When his attempts to contact Pawloski were unsuccessful, Stinnett called the police and reported the car stolen. The state introduced the ignition key to Pawloski's car, which Stinnett still had in his possession. The state also introduced the handwritten estimate and the repair bill generated by Stinnett, neither of which had been signed or initialed by

Pawloski.[1]  Finally, the state introduced a series of still photographs taken from the Royalton Automotive security videotape.

{¶ 6} On cross-examination, defense counsel questioned Stinnett about the dates and times that he was in touch with Pawloski about the needed repairs and the completed work.  Stinnett could not remember whether Pawloski dropped off his car on March 26 or March 27.  Defense counsel introduced into evidence phone records from Royalton Automotive for the dates March 26 through 29, 2008.  The phone records showed a call to an unidentified number from Royalton Automotive at 10:42 a.m. on March 28.  The records also showed several calls between Pawloski's phone and Royalton Automotive on the dates in question. Stinnett testified that he was not certain whether he had called Pawloski's home or cell phone on those occasions.

{¶ 7} Officer Christopher Johnson testified that on March 29, 2008, he was assigned to investigate the call from Stinnett about the 1995 Buick LeSabre missing from Royalton Automotive's lot.  Officer Johnson stated that he went to 8494 Wallings Road in North Royalton, because this was the address listed for the car's registered owner.  He knocked on the door and spoke with Pawloski's brother, who indicated that Pawloski was not home.  Officer Johnson noticed a 1995 Buick LeSabre matching the description of the missing car from Royalton Automotive parked behind the residence.

{¶ 8} Detective David Sword testified that he was assigned this case on April 22, 2008, to bring formal charges against Pawloski.  He testified that he tried to obtain a statement from Pawloski, but Pawloski refused to provide one.  Detective Sword testified that he viewed the security video from Royalton Automotive, in which he saw Pawloski enter his vehicle and drive it off the lot.  He further testified that the videotape did not show Pawloski enter the shop's office at any time prior to driving his car off the lot.

{¶ 9} At the conclusion of the state's case, Pawloski made a Crim.R. 29 motion, which the court denied.  The defense did not present any witnesses.  The court denied Pawloski's renewed Crim.R. 29 motion after the defense rested.

{¶ 10} The jury found Pawloski guilty of two counts of theft, in violation of R.C. 2913.02(A)(1) and (3), and one count of breaking and entering, in violation of R.C. 2911.13(A).  The court sentenced him to 24 months of community control, 300 hours of community work service, and restitution in the amount of $1,062 to Royalton Automotive.

---

1.  The state produced other Royalton Automotive work orders with Pawloski's name on them. Two had been signed or initialed by him; two had not.

{¶ 11} Pawloski appealed his convictions, raising three assignments of error for our review.

{¶ 12} "I. The trial court erred when it denied appellant's Rule 29 motion for acquittal because the state produced insufficient evidence to sustain a conviction."

{¶ 13} In his first assignment of error, Pawloski argues that there was no evidence that a common-law lien was established giving Royalton Automotive ownership rights, without which Pawloski could not be convicted of committing theft against himself.

{¶ 14} A motion for acquittal under Crim.R. 29(A) is governed by the same standard used for determining whether a verdict is supported by sufficient evidence. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. " 'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus * * *. [The weight to be given the evidence and the credibility of the witnesses are] primarily for the trier of the facts. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus." Id.

■ {¶ 15} Pawloski was convicted of one count of theft without consent, R.C. 2913.02(A)(1), and one count of theft by deception, R.C. 2913.02(A)(3).[2] R.C. 2913.02(A) states: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent; * * * (3) By deception; * * *."

{¶ 16} Pawloski argues that the state's failure to present evidence that Royalton Automotive had a superior possessory right to his car is fatal to a conviction. He also claims that if Royalton Automotive violated the Ohio Consumer Sales Practice Act ("OCSPA"), R.C. 1345.01 et seq., it cannot establish a common-law lien over his vehicle.

■ {¶ 17} "When a garage owner provides repairs to a motor vehicle, unless the contract between the parties provides otherwise, the garage owner may retain possession of the motor vehicle as security for the value of the repairs." *Robinson v. Barry Equip. Co.* (July 23, 1982), Wood App. No. WD–82–10, 1982 WL 6512; *Shearer v. Bill Garlic Motors, Inc.* (1977), 59 Ohio App.2d 320, 322–324, 394 N.E.2d 1014. A garageman's right to retain possession of a

---

2. Pawloski was also convicted of breaking and entering. See R.C. 2911.13(A). However, if both theft convictions were overturned, the breaking-and-entering conviction could not stand alone.

repaired car pending payment is a common-law lien. *State v. Vitale* (1994), 96 Ohio App.3d 695, 702, 645 N.E.2d 1277.

{¶ 18} However, "[p]ursuant to the [OCSPA], codified at R.C. Chapter 1345, and regulations enacted thereunder, it is a deceptive consumer transaction for a motor vehicle to be serviced without a prior written estimate or work order authorizing the work to be performed without the estimate. *Alexander v. Transm. by Bruce, Inc.*, Cuyahoga App. No. 89908, 2008-Ohio-2029, 2008 WL 1903815, ¶ 7. Ohio Adm.Code 109:4–3–13(A)(1) [3] requires that a consumer be given a form informing the consumer of the right to a written estimate when the costs of repairs exceeds $25." *State v. Ames*, 182 Ohio App.3d 736, 2009-Ohio-3509, 914 N.E.2d 1118.

{¶ 19} Some Ohio courts have recognized that "it is an unfair and deceptive practice under the OCSPA for a car mechanic or garageman to retain a common-law garageman's possessory lien on a motor vehicle after he has engaged in conduct [that] violates the Act" and that such violations can act to negate the mechanic's right to retain a possessory lien over the vehicle. *Mannix v. DCB Serv., Inc.*, Montgomery App. No. 19910, 2004-Ohio-6672, 2004 WL 2848921 ¶ 29; see also *Chun v. Staten* (Nov. 17, 1986), Ohio C.P. No. 85–431, 1986 WL 719154, and *Porter v. Cent. Auto Elec. & Radiator Shop, Inc.* (Nov. 26, 1990), Tuscarawas M.C. No. 7–89–CVF–124, 1990 WL 693198.

{¶ 20} We find that the facts in *Vitale*, which the state relies on, are sufficiently distinguishable from the facts in this case. In *Vitale*, the garageman voluntarily relinquished possession of Vitale's car, thereby dissolving his possessory interest in the vehicle. This did not occur here, where at all times Stinnett retained possession of Pawloski's car until Pawloski removed it from the lot.

{¶ 21} However, in *State v. Ames*, 182 Ohio App.3d 736, 2009-Ohio-3509, 914 N.E.2d 1118, the defendant took back his own truck without paying for the repairs; he was charged with theft without consent, in violation of R.C. 2913.02(A)(1). The *Ames* court held that the state failed to present evidence of a common-law lien because Ames was not given an estimate or any other written document to create a lien. *Id.*

---

**3.** Ohio Adm.Code 109:4–3–13 states: "(A) It shall be a deceptive act or practice in connection with a consumer transaction involving the performance of either repairs or any service upon a motor vehicle where the anticipated cost exceeds twenty-five dollars and there has been face to face contact at the supplier's place of business during the hours such repairs or services are offered, between the consumer or his representative and the supplier or his representative, prior to the commencement of the *repair or service for a supplier to:* (1) Fail, at the time of the initial face to face contact and prior to the commencement of any repair or service, to provide the consumer with a form which indicates the date, the identity of the supplier, the consumer's name and telephone number, the reasonably anticipated completion date and, if requested by the consumer, the anticipated cost of the repair or service."

{¶ 22} In this case, the state failed to present evidence that Stinnett provided Pawloski with any written form or estimate prior to beginning repairs on his vehicle. We find that the state failed to present sufficient evidence that Pawloski could be convicted of theft without consent. However, we find that the state presented sufficient evidence of theft by deception, in violation of R.C. 2913.02(A)(3).

{¶ 23} In dicta, the *Ames* court indicated that had the case been charged as theft of services by deception, under R.C. 2913.02(A)(3), and had the state proved that Ames never had the intent to pay for services he had requested, its analysis would have been different. Id. Likewise, in *State v. Pritchett* (Nov. 12, 1992), Cuyahoga App. No. 61072, 1992 WL 333130, this court affirmed a conviction for theft of services when the defendant wrote a bad check to pay for repair service to her car and, once notified that her check was returned for nonsufficient funds, failed to make good on the amount due and owing on the bill.

{¶ 24} We find that the state presented sufficient evidence of theft of services by deception. Stinnett's employee notified Pawloski that the car was ready. There was evidence that Pawloski came onto the Royalton Automotive lot and took his car without making any attempt to pay his bill or speak with Stinnett. Stinnett also testified that he tried to reach Pawloski on several occasions to pay for the repairs and Pawloski never returned Stinnett's phone calls or paid his bill.

{¶ 25} This evidence is sufficient to support a finding that Pawloski had the purpose to deprive Stinnett by deception of the amount due and owing for the car repairs.[4] Further, there was no evidence that Pawloski offered a reasonable justification or excuse for not paying for the services Stinnett had provided.[5] We can infer that Pawloski never intended to pay for the services he requested.[6]

{¶ 26} Therefore, we find that Pawloski's Crim.R. 29 motion should have been granted as to Count 1 and denied as to Counts 2 and 3. His first assignment of error is sustained in part and overruled in part. His conviction for theft in violation of R.C. 2913.02(A)(1) is vacated.

---

4. We also note that the evidence showed that the car was inoperable prior to the repairs being made. Had Pawloski not intended to deprive Stinnett of his services, he should have assumed that the car was not repaired and could not be driven off the lot.

5. Although not in evidence, the state referred to a complaint made to the Better Business Bureau ("BBB") by Pawloski against Royalton Automotive. The state introduced the response from Stinnett to the BBB and elicited from Stinnett that the complaint was dismissed.

6. See *Orange Village v. Woolfolk* (Oct. 5, 2000) Cuyahoga App. No. 77451, 2000 WL 1474506 ("Simply put, this is a contract, not a criminal case. The civil law provides adequate remedies for breached contracts, and it appears that the complaining witness [may avail herself] of the civil courts to obtain full restitution").

{¶ 27} "II. The court committed plain error and affected the outcome of the trial by not including in the jury instructions that the jury had to find that the state must prove beyond a reasonable doubt that Royalton Automotive had a valid lien, and that the lien was, superior to appellant's right to possess his vehicle."

{¶ 28} In light of our decision that the state failed to present sufficient evidence of a common-law lien, Pawloski's second assignment of error is moot.

{¶ 29} "III. The state improperly withheld the video evidence of the defendant dropping his car off at Royalton Automotive in violation of defendant's due process rights."

{¶ 30} In his third assignment of error, Pawloski argues that the state's failure to produce the security videotape violated his due-process rights because its production would have eliminated inconsistencies in the witnesses' testimony. Specifically, he points to Stinnett's failure to remember certain dates related to the work on Pawloski's car. We are not persuaded.

{¶ 31} We note at the outset that Pawloski does not cite any case law in support of his argument. Having failed to raise this issue before now, we understand that Pawloski is arguing that the videotape may have been exculpatory, but he offers no explanation as to how. Yet, the crux of his argument is that the videotape evidence would undermine Stinnett's credibility regarding the dates of his interaction with Pawloski.

{¶ 32} The state's failure to preserve materially exculpatory evidence violates a defendant's due-process rights under the Fourteenth Amendment to the United States Constitution. See *Arizona v. Youngblood* (1988), 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281. The burden rests with the defendant to prove that the evidence in question was materially exculpatory. See *State v. Jackson* (1991), 57 Ohio St.3d 29, 33, 565 N.E.2d 549. Such evidence is deemed materially exculpatory if "there is a 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Johnston* (1988), 39 Ohio St.3d 48, 61, 529 N.E.2d 898, citing *United States v. Bagley* (1985), 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Jackson,* 57 Ohio St.3d at 33, 565 N.E.2d 549.

{¶ 33} In contrast, evidence is not materially exculpatory if it is merely potentially useful. See *State v. Lewis* (1990), 70 Ohio App.3d 624, 591 N.E.2d 854. Potentially useful evidence indicates that the evidence may or may not have incriminated the defendant. Id. The failure to preserve evidence that by its nature or subject is merely potentially useful violates a defendant's due-process rights only if the police or prosecution acted in bad faith. *Youngblood,* 488 U.S.

51, 109 S.Ct. 333, 102 L.Ed.2d 281; *State v. Keith* (1997), 79 Ohio St.3d 514, 523, 684 N.E.2d 47. The "term 'bad faith' generally implies something more than bad judgment or negligence. 'It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.' " *State v. Wolf,* 154 Ohio App.3d 293, 2003-Ohio-4885, 797 N.E.2d 109, at ¶ 14, quoting *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315.

{¶ 34} Our inquiry here is what standard should apply in evaluating an alleged due-process violation based on lost or destroyed evidence. We find that Pawloski has not persuaded us that the videotape would have been materially exculpatory, i.e., he was not the person who drove his car off the Royalton Automotive lot.[7] Instead he argues that it would have been used to clear up discrepancies in the dates that Pawloski dropped the car off at the garage and it was found missing from the lot. We find that this alters the evidentiary value of the tape from "exculpatory" to "potentially useful."

{¶ 35} Having concluded that the missing videotape could not have been exculpatory but, rather, may have been useful to Pawloski in undermining the credibility of the state's key witness, we must next determine whether the state acted in bad faith.

{¶ 36} Pawloski can demonstrate a violation of his due-process rights under these circumstances only upon a showing of bad faith in the destruction of the evidence. See *Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281. In the present case, the parties do not dispute that the videotape was accidentally erased while in police control. Defense counsel never raised at trial an issue about the videotape's unavailability. The state introduced into evidence a series of still photos taken from the videotape, and Pawloski never objected. Furthermore, Pawloski never objected to Stinnett's testimony about the contents of the videotape.

{¶ 37} Stinnett's testimony was that he viewed the videotape and saw Pawloski dropped off in his lot, look around the lot, enter the 1995 LeSabre, and drive off the lot without making any attempt to speak with an employee of the company. The jury was free to believe Stinnett or not whether he viewed Pawloski take his car off the lot without paying for the repairs.

{¶ 38} Furthermore, the jury was free to believe Stinnett's testimony about the date Pawloski dropped his car off for repairs, the dates Stinnett called Pawloski

---

7. In fact, defense counsel stated to the court while arguing his Crim.R. 29 motion: "I admit that [Pawloski] did not handle the situation in a good way. He did go pick up his own car * * *."

regarding the estimate and the completion of work, and the dates Stinnett tried to contact Pawloski about taking his car without making payment for the work. These were issues of credibility to be determined by the trier of fact. The jury could well have found Stinnett's testimony, including its discrepancies, to be unconvincing. Instead, the jury found Stinnett's testimony and the evidence presented credible enough to convict Pawloski of theft beyond a reasonable doubt.

{¶ 39} We do not find that the state improperly withheld the videotape evidence in light of the fact that the tape was erased accidentally. Nor do we find that the failure to produce the videotape violated Pawloski's due-process rights because there was no showing of bad faith. Pawloski's third assignment of error is overruled.

{¶ 40} The judgment is affirmed in part and reversed in part to vacate Pawloski's theft conviction under R.C. 2913.02(A)(1).

Judgment affirmed in part
and reversed in part,
and conviction vacated in part.

BOYLE and JONES, JJ., concur.