OPINION
{¶ 1} American Mutual Share Insurance Corporation ("ASI"), and Kenneth A. Roberts ("Roberts"), appeal from the August 10, 2005 judgment entry of the Franklin County Court of Common Pleas in favor of United Telephone Credit Union. Roberts is appealing in his role as the acting Deputy Superintendent of Credit Unions and ASI is the court-appointed conservator of United Telephone Credit Union.
 {¶ 2} Appellee, United Telephone Credit Union ("UTCU"), is a state-chartered credit union. Until 2003, UTCU was controlled by a board of directors consisting of Martin Hughes, his wife, Natalie Hughes, his cousin, Daniel Hughes, and neighbors, Shannon Gould and Mary Jane Gould.[1] UTCU is regulated by the Ohio Department of Commerce, Division of Financial Institutions ("DFI"). F. Scott O'Donnell is superintendent of DFI. Roberts was the acting Deputy Superintendent for Credit Unions within the DFI.
 {¶ 3} In 2001, a number of questionable occurrences and practices were discovered during a routine examination of UTCU conducted by DFI. As a result, on July 18, 2002, DFI entered into a supervisory agreement with the five members of the board of directors. Despite the agreement, the UTCU board failed to correct the questioned practices. Furthermore, DFI discovered incidents of self-dealing and misappropriation of UTCU funds by Martin and Natalie Hughes.[2]
 {¶ 4} Based upon these revelations and the board's failure to perform under the Supervisory Agreement, DFI, acting through Roberts as Deputy Superintendent, executed an order appointing a conservator on February 24, 2003.[3] The order made ASI the conservator of UTCU.
 {¶ 5} On February 27, 2003, pursuant to the 30-day time period set forth in R.C. 1733.361(A)(2), UTCU filed an action contesting the appointment of ASI as conservator.[4]
However, UTCU voluntarily dismissed the action on May 20, 2003.
 {¶ 6} In September 2003, Martin Hughes was declared legally incompetent by the Cuyahoga County Probate Court. His son, Carl Hughes, was appointed as his guardian. As guardian, Carl Hughes consented to the removal of Martin Hughes from his position as a director of UTCU. Shortly thereafter, Daniel Hughes was also removed from the board. By early 2003, Shannon Gould and Kathryn Munteanu had resigned from their positions. On July 23, 2003, DFI issued an order signed by acting Deputy Superintendent Roberts, to remove Natalie Hughes from the board. Thus, by September 2003, there were no members on the board of directors of UTCU.
 {¶ 7} Natalie Hughes appealed her removal as a director of UTCU on the grounds that Roberts lacked authority to sign the July 23, 2003 order. On December 22, 2004, the trial court reversed DFI's order and reinstated Hughes as a director. DFI appealed the trial court's decision on December 1, 2005 inHughes v. Ohio Dept. of Commerce, Division of Financial Inst.,
Franklin App. No. 04AP-1386, 2005-Ohio-6368. We held that the trial court lacked jurisdiction to hear Hughes' appeal of DFI's order. As a result, the July 23, 2003 DFI order removing Natalie Hughes as the last director of UTCU was upheld.
 {¶ 8} On May 20, 2004, one year after UTCU voluntarily dismissed its complaint contesting the order of conservatorship and more than nine months after she was removed from the board of directors, Natalie Hughes authorized the original complaint to be re-filed.[5]
 {¶ 9} UTCU filed a motion for partial summary judgment against Roberts, and a motion for summary judgment against ASI or alternatively to dismiss ASI from the action. Roberts filed a motion for summary judgment on the grounds that the trial court lacked subject matter jurisdiction because UTCU had failed to bring the action within the 30-day period provided by R.C.1733.361(A)(2).
 {¶ 10} The trial court determined that the Ohio savings statute, R.C. 2305.19 applied to the action filed on May 20, 2004, and therefore, there was subject matter jurisdiction to hear the case. The trial court went on to hold that only the superintendent of DFI, O'Donnell, had the authority to issue the 2003 conservatorship order. Because the order was signed by Roberts as acting Deputy Superintendent, the trial court concluded it was invalid. The trial court ordered that ASI be removed as conservator. The trial court further determined that Natalie Hughes, as a single director, had standing to bring the action contesting the conservatorship on behalf of UTCU. Roberts, as acting Deputy Superintendent for Credit Unions, filed a timely notice of appeal on August 10, 2005. ASI filed its notice of appeal on August 19, 2005.
 {¶ 11} Appellants allege ten assignments of error:
FIRST ASSIGNMENT OF ERROR:
THE TRIAL COURT ERRED IN ITS JULY 26, 2005 DECISION WHEN IT FOUND THAT KENNETH A. ROBERTS, ACTING DEPUTY SUPERINTENDENT FOR CREDIT UNIONS ("ROBERTS"), DID NOT HAVE THE AUTHORITY TO SIGN AND ISSUE THE FEBRUARY 24, 2003 ORDER APPOINTING CONSERVATOR OVER UNITED TELEPHONE CREDIT UNION, INC. ("UTCU").
SECOND ASSIGNMENT OF ERROR:
THE TRIAL COURT ERRED IN ITS JULY 26, 2005 DECISION WHEN IT FOUND THAT F. SCOTT O'DONNELL, SUPERINTENDENT OF FINANCIAL INSTITUTIONS, DID NOT PROPERLY AUTHORIZE ROBERTS TO ISSUE THE FEBRUARY 24, 2003 ORDER APPOINTING CONSERVATOR OVER UTCU.
THIRD ASSIGNMENT OF ERROR:
THE TRIAL COURT ERRED IN ITS JULY 26, 2005 DECISION WHEN IT FOUND THAT O'DONNELL AND/OR THE STATE OF OHIO COULD NOT RATIFY THE ACTIONS OF ROBERTS IN SIGNING THE FEBRUARY 24, 2003 ORDER APPOINTING CONSERVATOR OVER UTCU.
FOURTH ASSIGNMENT OF ERROR:
THE TRIAL COURT ERRED IN ITS JULY 26, 2005 DECISION WHEN IT FOUND THAT THE FEBRUARY 24, 2003 ORDER APPOINTING CONSERVATOR IS VOID. FIFTH ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED IN ITS JULY 26, 2005 DECISION WHEN IT FOUND THAT PLAINTIFF'S COMPLAINT WAS AUTHORIZED BY UTCU.
SIXTH ASSIGNMENT OF ERROR:
THE TRIAL COURT ERRED IN ITS JULY 26, 2005 DECISION WHEN IT FOUND THAT A SINGLE DIRECTOR OF UTCU COULD AUTHORIZE THE FILING OF AN ACTION UNDER R.C. 1733.361.
SEVENTH ASSIGNMENT OF ERROR:
THE TRIAL COURT ERRED IN ITS JULY 26, 2005 DECISION WHEN IT FOUND THAT PLAINTIFF FILED ITS COMPLAINT WITHIN THE TIME PERIOD ALLOWED BY OHIO REVISED CODE ("R.C.") 1733.361.
EIGHTH ASSIGNMENT OF ERROR:
THE TRIAL COURT ERRED IN ITS JULY 5, 2005 DECISION AND ENTRY THAT OHIO'S SAVINGS STATUTE, R.C. 2305.19, SAVED PLAINTIFF'S ACTION FROM BEING BARRED BY THE STATUTE OF LIMITATIONS.
NINTH ASSIGNMENT OF ERROR:
THE TRIAL COURT ERRED IN ITS AUGUST 1, 2005 DECISION AND ENTRY DENYING DEFENDANT'S MOTION TO DISQUALIFY COUNSEL.
TENTH ASSIGNMENT OF ERROR:
THE TRIAL COURT ERRED IN DENYING DEFENDANT ROBERTS' CROSS-MOTION FOR SUMMARY JUDGMENT.
 {¶ 12} Appellate review of motions for summary judgment is de novo. Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390. The moving party bears the burden of proving (1) no genuine issues of material fact exist, (2) the moving party is entitled to summary judgment as a matter of law, and (3) reasonable minds can come to only one conclusion, which is adverse to the nonmoving party. Civ.R. 56. The nonmoving party must present specific facts beyond the pleadings to show genuine issues of material fact. Dresherv. Burt (1996), 75 Ohio St.3d 280.
 {¶ 13} Appellants' fifth and sixth assignments of error are interrelated. We will address them together. In their fifth assignment of error, appellants allege that Natalie Hughes was not authorized by the board of UTCU to refile the complaint. InHughes, supra, we held that because Hughes failed to comply with the requirements of R.C. 119.12 in her appeal of the DFI's order removing her as a director, the trial court lacked jurisdiction to hear her appeal. Therefore, the order removing Hughes from the board of directors of UTCU was never lawfully overturned and Hughes was not a lawful director at the time she purported to authorize the re-filing of the instant action to remove the conservator.
 {¶ 14} Even if Natalie Hughes had been a lawful director of UTCU at the time of the re-filing of the complaint under R.C.1733.361(A)(2), the result does not change. Authority to seek judicial relief from the appointment of a conservator is found in R.C. 1733.361(A)(2). In pertinent part, that section provides that a "credit union may commence a civil action * * * to obtain an order compelling the superintendent to remove the conservator." Appellee argues that a single director or, for that matter, any member or officer of a credit union may commence an action under R.C. 1733.361. As explained below and in the sixth assignment of error, we disagree.
 {¶ 15} R.C. 1733.15(A) provides as follows:
Except as otherwise provided by law, the articles, or regulations, the corporate powers of a credit union shall be exercised, its business conducted, and its property controlled by a board of directors, provided that the number of directors fixed by the articles or regulations shall not be less than five.
Thus, under R.C. 1733.15(A), the corporate powers of a credit union may be exercised only by its board of directors.
 {¶ 16} UTCU contends that the general provisions in R.C.1733.15(A) are trumped by the specific provisions in R.C.1733.361(A)(2), in which there is no limiting language constituting what or who is a "credit union." Instead, R.C.1733.361(A)(2) only states that a "credit union may commence a civil action." Furthermore, R.C. 1733.361(A)(3) states that "[t]he credit union may consent to the appointment of a conservator by resolution of the majority of the board of directors of record on the date of the order of appointment." UTCU argues that, because R.C. 1733.361(A)(2) does not specifically mention the board of directors, the General Assembly clearly intended that officers and members may also challenge a conservatorship. UTCU notes that DFI even conceded in a March 24, 2005 letter[6] that the term "credit union" in R.C.1733.361(A)(2) included officers, directors and members among those with the power to challenge a conservatorship. Based upon this interpretation, UTCU argues that Hughes, as a member, had standing to bring this action.
 {¶ 17} We decline to accept appellee's broad interpretation of who may sue on behalf of a credit union. The plain language of the statutes mandate that an action brought on behalf of a credit union may be initiated only by a board of directors made up of no fewer than five members. R.C. 1733.15(A). It is clear that R.C.1733.361(A)(2) was not intended to be an alternative to R.C.1733.15(A). Appellee is correct in noting that R.C.1733.361(A)(2) does not state that a majority of the board must approve the credit union's action to challenge a conservator. However, nowhere in R.C. 1733.361 is there a provision providing that anyone other than the board of directors may authorize an action on behalf of the credit union. The language of R.C.1733.15(A) and 1733.361(A)(2) is clear. It is not the job of this court "to add to, enlarge, supply, expand, extend or improve the provisions of the statute to meet a situation not provided for."State ex rel. Toledo Blade Co. v. Univ. of Toledo Foundation
(1992), 65 Ohio St.3d 258, 265; citing State ex rel. Foster v.Evatt (1944), 144 Ohio St. 65, paragraph eight of the syllabus.
 {¶ 18} Appellants' sixth assignment of error asserts that the trial court erred in holding that a single director could authorize the filing of an action on behalf of the credit union. As pertinent to this question, R.C. 1733.17 provides that "a majority of the entire authorized number of directors is necessary to constitute a quorum for a meeting of directors * * * [and] [t]he act of a majority of the directors present at a meeting at which a quorum is present is the act of the board." Therefore, because the corporate powers of a credit union may be exercised only by its board of directors, (R.C. 1733.15[A]), and the board may act only through a majority of a lawful quorum, (R.C. 1733.17), no single director has the statutory authority to authorize action by the credit union, including bringing an action under R.C. 1733.361. Additionally, because only the board of directors may exercise corporate power, an action under R.C.1733.361 may not be commenced by an officer or member of the credit union.
 {¶ 19} The provisions of the Ohio Revised Code are clear. An action to remove a conservator pursuant to R.C. 1733.361(A)(2) may not be brought by a single member of the board of directors or by an officer or member of the credit union. Therefore, whether as a single director, an officer, or as a member of the credit union, Natalie Hughes had no standing to authorize the re-filing of the complaint. Moreover, at the time she purported to authorize the re-filing of the complaint, Hughes had been removed from her directorship by order of the DFI. Because Hughes failed to properly invoke the jurisdiction of the common pleas court in her administrative appeal from that order under R.C.119.12, the removal order was final at the time it was issued. Because the re-filing of the action under R.C. 1733.361(A)(2) was never properly commenced, the trial court lacked subject matter jurisdiction to hear the complaint. The fifth and sixth assignments of error are sustained.[7]
 {¶ 20} Appellants' tenth assignment of error alleges the trial court erred in denying Roberts' cross-motion for summary judgment. Pursuant to our determination that the trial court lacked subject matter jurisdiction to hear this action, we find appellants' tenth assignment of error moot.
 {¶ 21} For the foregoing reasons, we sustain the fifth and sixth assignments of error. All remaining assignments of error are moot and this matter is remanded to the trial court with instructions to dismiss the complaint.
Judgment reversed and remanded with instructions.
Sadler and French, JJ., concur.
[1] Mary Jane Gould's daughter, Kathryn Gould Munteanu, replaced her on the board of directors later in the proceedings.
[2] DFI had been conducting a routine investigation of UTCU for reasons not relevant to this appeal. During its investigation, DFI uncovered suspicious transfers of shares of Fahey Banking Company from UTCU to Natalie Hughes, who was also the majority shareholder of Fahey. However, this transfer was not sufficiently reflected in UTCU's financial records. For these reasons, DFI initiated the supervisory agreement with UTCU which required UTCU to correct certain policies, and report all disbursements of UTCU funds to directors, to adopt a new reimbursement policy, and required all new directors to first be approved by DFI.
[3] Roberts was given authority to issue the order by his supervisor, Superintendent O'Donnell. Whether this authorization was valid is irrelevant to our analysis of this case.
[4] Testimony given by Kathryn Munteanu, Shannon Gould, and Daniel Hughes reveals that a majority of the board did not authorize the original February 27, 2003 filing of this action.
[5] ASI, as conservator of UTCU, filed a motion to intervene as a defendant. The motion was granted on January 6, 2005.
[6] DFI's counsel stated "[t]he officers, directors and members of the credit union clearly retain the specific right, power and authority to initiate and prosecute the action expressly permitted in R.C. 1733.361(A)(2), not withstanding R.C. 1733.361(B)(2)." Counsel based its assessment on the fact that the phrase "right, power and authority" passes to the conservator in R.C. 1733.361(B)(2). However, R.C. 1733.361(C) prevents title to the assets of the credit union from passing under subsection (B). DFI surmised that because the credit union retained the power and authority to bring an action against the conservator, the officers, directors and members also retained that right. However, such language does not automatically vest the authority to bring suit in officers and members. R.C. 1733.15(A) specifically vested that power in the board of directors. The officers and members cannot retain a power they never possessed. Furthermore, any membership action may only be done with either (1) the majority of the quorum present at a membership meeting, or (2) written authorization by two-thirds of the membership. UTCU does not allege that the membership legitimately authorized this action; only that Hughes, as a member, had standing to bring it.
[7] Because Natalie Hughes lacked authority to authorize the re-filing of the complaint, the trial court lacked subject matter jurisdiction. Therefore, we need not address whether the Savings Statute, R.C. 2305.19, would be applicable to actions brought under R.C. 1733.361.