{¶ 63} I respectfully dissent.
 {¶ 64} Since appellant filed specific factual and legal objections to the magistrate's decision granting relief from judgment, pursuant to Civ.R. 60(B), the trial court, prior to adoption of the magistrate's decision, was required, by Civ.R. 53(D)(4)(d) "to independently review the decision." In re Gibbs (Mar. 13, 1998), 11th Dist. No. 97-L-067, 1998 Ohio App. LEXIS 997, at *11; Civ.R. 53(D)(4)(d) ("If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law.") *Page 18 
 {¶ 65} The court's role, as the ultimate finder of fact, "is to determine whether the [magistrate] has properly determined the factual issues and appropriately applied the law, and where the [magistrate] has failed to do so, the court must substitute its judgment for that of the [magistrate]." Gibbs, 1998 Ohio App. LEXIS 997, at *12, citingPacific v. Interstate Ford, Inc. (May 17, 1996), 2nd Dist. No. 15427, 1996 Ohio App. LEXIS 1940, at *6. In other words, there must be evidence that the trial court conducted a de novo review before adopting, rejecting, or modifying the magistrate's decision. Anspach v.Anspach, 11th Dist. No. 2006-G-2706, 2006-Ohio-6344, at ¶ 31 (citations omitted); Lowery v. Keystone Bd. of Education (May 9, 2001), 9th Dist. No. 99CA007407, 2001 Ohio App. LEXIS 2064, at *7 ("this independent review requires a trial court to conduct a de novo examination of the record").
 {¶ 66} When a court defers "to the decision of its magistrate to a degree ordinarily associated with an appellate review [abuse of discretion] standard and incompatible with * * * de novo review," it constitutes an abuse of discretion for the purposes of appellate review.Quick v. Kwiatkowski, 2nd Dist. No. 18620, 2001-Ohio-1498, 2001 Ohio App. LEXIS 3437, at *10-11.
 {¶ 67} In the case sub judice, had an "independent review" of the magistrate's decision been conducted, the trial court would have realized the magistrate's "finding" that Thompson was "incompetent," thus warranting relief from judgment, was both a factual and legal error. Unfortunately, the majority opinion perpetuates this error.
 {¶ 68} As the majority notes, "[i]n order to prevail on a motion for relief from judgment pursuant to Civ.R. 60(B), the movant must demonstrate: (1) a meritorious *Page 19 
claim or defense; (2) entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) timeliness of the motion." Citizens Bank of Logan, Ohio v. Powell (June 23, 1997), 4th Dist. No. 96CA22, 1997 Ohio App. LEXIS 2876, at *9, citing RoseChevrolet, Inc. v. Adams (1987), 36 Ohio St.3d 17, 20; GTE AutomaticElec. v. ARC Industries (1976), 47 Ohio St.2d 146, at paragraph two of the syllabus. "If any of these three requirements [are] not met, the motion should be overruled." Citizens Bank, 1997 Ohio App. LEXIS 2876, at *9.
 {¶ 69} The majority concludes that Thompson satisfied all three requirements. I disagree. Assuming, arguendo, that Thompson established he has a meritorious defense, he has not established either that he is entitled to relief, under Civ.R. 60(B)(5), or that his motion was filed in a timely manner.
 {¶ 70} With regard to Thompson's incompetence, which is nominally the reason relief from judgment was granted under Civ.R. 60(B)(5), the magistrate made the following findings of fact and conclusions of law:
 {¶ 71} "The Magistrate remembers clearly the difficulties present in this case. Mr. Thompson had numerous health problems and discovery and hearings often had to be delayed. In addition, Mr. Thompson was often stubborn and uncooperative. Perhaps the sanction of default judgment was warranted. But there is the likelihood that Mr. Thompson's lack of cooperation was a symptom of his slide into incompetence.
 {¶ 72} "Attached to the motion for relief from judgment is an affidavit of a physician who has treated Mr. Thompson since 2002. Dr. Isaacson did not testify at the hearing, but he opined in his affidavit that due to Mr. Thompson's health problems and *Page 20 
medications, his mental status was altered such that he had significant memory impairment and that he was incapable of comprehending his legal obligations in 2004.
 {¶ 73} "* * *
 {¶ 74} "Mr. Thompson's daughter and wife both testified to their father's mental state during 2003 and 2004 [sic]. While the Magistrate understands that this case has been pending since 2001, and discovery problems were present even before 2003 and 2004, which may not have beenattributable to Mr. Thompson's mental state, the fact that judgment was rendered while Mr. Thompson was likely incompetent warrants vacating the judgment, assuming all of the GTE prongs are met. * * * [T]he magistrate finds that the witnesses at the hearing on the motion for relief from judgment were credible, that Mr. Thompson's health problems rendered him incapable of defending his case in 2004 when the judgments were issued and that justice demands that a judgment not be taken against anincompetent party." (Emphasis added).
 {¶ 75} As the majority correctly notes, "incompetent" has a distinct legal meaning. An incompetent person is defined as "any person who is so mentally impaired as a result of a mental or physical illness or disability * * * that the person is incapable of taking proper care of the person's self or property * * *." R.C. 2111.01 (D).
 {¶ 76} The majority is also correct that, as a general proposition, "a party's incompetence may be sufficient to justify the granting of a motion for relief from judgment" under Civ.R. 60(B)(5).
 {¶ 77} However, the trial judge and majority incorrectly conclude, based simply upon the magistrate's references to Thompson's "slide into incompetence," and his *Page 21 
"likely incompetence," that the magistrate found that Thompson waslegally incompetent. Such a finding is neither supported by the facts nor the law.
 {¶ 78} As this court has stated, "a person does not have the legalcapacity to * * * defend an action which [he or] she has been declaredincompetent and a guardian has been appointed." Cooper v. Smith (June 30, 1993), 11th Dist. No. 92-L-125, 1993 Ohio App. LEXIS 3354, at *2 (citations omitted) (emphasis added).
 {¶ 79} In the instant case, there is no record evidence that either of these conditions were met. With regard to this issue, the testimony of YTeva Thompson, who testified that she was now running Thompson's businesses, was as follows:
 {¶ 80} "Q: Okay. And did you go to court to have him declared incompetent [and] to appoint you to take over family matters?
 {¶ 81} "A: No.
 {¶ 82} "Q: As of this point has there been any legal declaration by a court that he is incompetent and unable to handle his affairs?
 {¶ 83} "* * *
 {¶ 84} "A: I'm sorry. His doctors declared him incompetent * * *.
 {¶ 85} "Q: So the answer's, no, you haven't actually gone to court about that?
 {¶ 86} "A: Correct."
 {¶ 87} Pursuant to R.C. 2101.24(A)(1)(g), "the probate court hasexclusive jurisdiction * * * [t]o make inquests respecting persons who are so mentally impaired as a result of mental or physical illness or disability * * * that they are unable to manage their property and affairs effectively * * *." (Emphasis added). Moreover, "the probate court on *Page 22 
its own motion or on application by any interested party shall appoint* * * a guardian * * * of a minor or incompetent * * *." R.C. 2111.02(A) (emphasis added); accord In re Hollins, 8th Dist. No. 86412 and 86574,2006-Ohio-1543, at ¶ 10 ("[A]bsent an incompetency finding by the probate court or an application to establish a guardianship based upon incompetency, Ohio Law does not recognize `de facto' guardianships.").
 {¶ 88} Thus, without a declaration from the probate court or appointment of a guardian by that court, even an unequivocal finding in the magistrate's decision that Thompson was "legally incompetent," is a legal fiction since the trial court was without jurisdiction to makesuch a determination. It logically follows, then, that the trial court's adoption of the magistrate's decision with regard to the finding of "legal incompetence," constitutes an error of law on the face and an abuse of discretion warranting reversal.
 {¶ 89} An examination of the cases cited by the majority supports this conclusion. See Newark Orthopedics, Inc. v. Brock (1994),92 Ohio App.3d 117, 123 (granting relief from judgment under Civ.R. 60(B)(5) because "[a]t the time of both the attempted service * * * and the entering of the judgments in this case, appellant had been adjudicated to beincompetent, and no guardian or guardian ad litem was representing him in the action") (emphasis added); Columbus v. Triplett (Nov. 16, 2000), 10th Dist. No. 00AP-339, 2000 Ohio App. LEXIS 5301, at *19 ("appellant has not previously been adjudicated as incompetent"); CitizensBank, 1997 Ohio App. LEXIS 2876, at *12-*13 ("Thomas Kilbane was also comprised of appellee's alleged incompetency because he served as her guardian and then as the attorney for the guardianship"); see also,United Tel. Credit Union, Inc. v. Roberts, 10th Dist. Nos. 05AP-827 and 05AP-870, 2006-Ohio-2198, *Page 23 
at ¶ 6 ("Martin Hughes was declared legally incompetent by the Cuyahoga County Probate Court. His son, Carl Hughes was appointed as his guardian.").
 {¶ 90} Even if we were to assume, arguendo, that the trial court had jurisdiction to declare Thompson legally incompetent, its reliance on the affidavit of Dr. Isaacson, while somewhat probative of the issue of Thompson's alleged incompetency, was not sufficient to warrant relief from judgment, since Dr. Isaacson did not testify at trial and was not subject to cross-examination. See Vaughn v. Precision Truss and Panel,Inc. (May 25, 1979), 2nd Dist. No. 11243, 1989 Ohio App. LEXIS 1904, at *12 (The court stated, in dicta, that "[h]ad appellant presented expertmedical testimony regarding the extent of Barbara Gilbert's mentalhealth, this court might have found the necessary `extraordinarycircumstances' to permit relief from judgment [under Civ.R. 60(B)(5)].") (Emphasis sic).
 {¶ 91} The majority states "[t]he magistrate's decision [also] effectively held that, due to his incompetence, Robert Thompson was not capable of acting willfully or in bad faith, as is required for an entry of default judgment due to a discovery violation," and uses this as a reason to uphold the trial court's decision.
 {¶ 92} Notwithstanding the fact that the magistrate's finding of Thompson's incompetence is not supported by law, I agree with the majority that there must also be a showing that "the actions of the defaulting party create[d] a presumption of willfulness or bad faith." See State ex rel. Dispatch Printing Co. v. Johnson, 106 Ohio St.3d 160,2005-Ohio-4384, at ¶ 49 ("It is an abuse of discretion for a trial court to grant a default *Page 24 
judgment for failing to respond to discovery requests when the record does not show willfulness or bad faith on the part of the responding party.") (Citation omitted).
 {¶ 93} As stated by this court, "[t]he term `bad faith' generally implies something more than bad judgment or negligence. `It imports a dishonest purpose, moral obliquity, conscious wrongdoing, [or] breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.'" State v. Lothes, 11th Dist. No. 2006-P-0086,2007-Ohio-4226 at ¶ 18, citing State v. Wolf, 154 Ohio App.3d 293,2003-Ohio-4884, at ¶ 14; quoting Hoskins v. Aetna Life Ins. Co. (1983), 6 Oho St.3d 272, 276.
 {¶ 94} A review of the record is rife with examples showing that Thompson's failure to respond to discovery requests was the product of bad faith.
 {¶ 95} The case sub judice dates back to December 26, 2000, when Summit Gardens filed a complaint for Forcible Detention and Rent against Appellant. At the time the aforementioned complaint was filed, attorney Peter Kratcoski represented appellee Summit Gardens. In January of 2001, appellant filed his answer to Summit Gardens' complaint, along with a counterclaim for violations of his civil rights under State and Federal laws.
 {¶ 96} On April 30, 2001, appellant served his first set of interrogatories and request for production of documents on appellee, Summit Gardens.
 {¶ 97} On August 10, 2001, after failing to receive any response, appellant filed his first motion to compel discovery and for sanctions, pursuant to Civ.R. 37(D), which was served by regular mail upon Attorney Kratcoski. *Page 25 
 {¶ 98} Pursuant to the Ohio Rules of Civil Procedure, "[i]f a party or an officer, director, or managing agent of a party * * * fails (1) to appear before the officer who is to take his deposition after being served with a proper notice, or (2) to serve answers or objections to interrogatories * * * after proper service of the interrogatories, or (3) to serve a written response to a request for inspection * * * after proper service of the request, the court in which the action is pending on motion and notice may make such orders in regard to the failure as are just, and among others it may take any action authorized [under Civ.R. 37(B)(2)(a), (b), and (c)] * * *." Civ.R. 37(D). Such failure to act as described above "may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order * * *." Id. There is no record evidence that any of the appellees in question filed for a protective order until December 9, 2002, almost two years after appellant filed his counterclaim.
 {¶ 99} On August 29, 2001, Attorney Kratcoski was terminated as counsel of record and filed a motion to withdraw, which was granted the following day. Subsequently, on September 17, 2001, appellant filed a supplemental motion to compel discovery and for sanctions, which was served upon Thompson, as General Partner of Summit Gardens.
 {¶ 100} On September 18, 2001, the trial court entered a judgment on appellant's motions to compel and for sanctions. Pursuant to this judgment, the trial court ordered (1) that Thompson was to appear for a deposition on September 28, 2001; (2) that he was to make all documents encompassed in appellant's request for production available on that date; (3) that Summit Gardens was to pay all costs associated with the *Page 26 
deposition; (4) that Summit Gardens had been deemed to have waived all objections to appellant's discovery request; (5) that Summit Gardens was responsible for the attorney fees associated with the aforementioned motions, and; (6) that Summit Gardens' claim against appellant was dismissed.
 {¶ 101} On September 28, 2001, Thompson failed to appear for the scheduled deposition. On the same date, Thompson, acting pro se, motioned the court to dismiss his Summit Gardens' claim against appellant, despite the fact that it had already been dismissed by the trial court.
 {¶ 102} On October 12, 2001, appellant served Thompson with a second notice of deposition and demand for documents. The deposition was scheduled to take place at Thompson's office on October 24, 2001.
 {¶ 103} On October 17, 2001, Thompson, again acting pro se, filed a motion to dismiss appellant's counterclaim and "squash all harassment that we have been receiving" from appellant's attorney. The court denied these motions on November 6, 2001.
 {¶ 104} On November 16, 2001, after being granted leave to amend his counterclaim, appellant added Del Rob, Inc., R G Thompson Associates, Inc. and Robert Thompson as third-party defendants. On December 7, 2001, Thompson filed a second pro se motion to dismiss and motion to "squash [sic]." On the same date, he filed a "motion for reconsideration and dismissal."
 {¶ 105} On December 26, 2001, appellant filed a motion for default judgment, pursuant to Civ.R. 55(A) against the third-party defendants, for a failure to answer or *Page 27 
otherwise defend the amended counterclaim. On the same day, appellant also filed a Motion for default judgment against Summit Gardens for failure to make discovery.
 {¶ 106} In January 2002, Thompson hired attorney Gabrielle Ross to represent appellees. Between January and February of 2002, Attorney Ross entered notices of appearance on behalf of all appellees, a motion for continuance, and a motion for leave to plead and answer appellant's counterclaims, all of which were granted by the trial court.
 {¶ 107} On March 4, 2002, appellees filed their first "Motion to Vacate Judgment," pursuant to Civ.R. 60(B). Interestingly, the motion does not reference which judgment appellees sought to vacate other than by making a generic reference to a "default judgment" granted by the court. In support of this motion, Thompson cited to his ill health being a factor in his failure to comply with the court's prior discovery orders, as well as his lack of representation by counsel for the period of August, 2001 through January, 2002.
 {¶ 108} On March 12, 2002, the trial court entered judgment denying appellant's motions for default judgment, which were filed on December 26, 2001, "due to the fact that Attorney Gabrielle T. Ross recently entered her appearance as counsel," filed answers on appellees' behalf, and "has responded to discovery requests." On the same date, the court scheduled a hearing on appellees' March 4, 2002 motion for relief from judgment. Appellant filed a motion to reconsider the court's denial of his motions for default judgment on March 20, 2002. *Page 28 
 {¶ 109} On March 28, 2002, appellees filed a motion to continue the hearing on their Civ.R. 60(B) motion, due to a "scheduled arteriogram" on that date.
 {¶ 110} On March 29, 2002, appellant filed another notice of deposition of party witnesses, scheduling the depositions of Thompson and two other individuals for April 25, 2002. No deposition took place on that date, and the record indicates no reason for Thompson's absence.
 {¶ 111} On May 13, 2002, appellant filed a notice of service of discovery request, indicating that interrogatories and requests for production of documents had been sent to appellees RG Thompson Associates, Inc., Del Rob, Inc., Robert Thompson, and Summit Gardens. On May 17, 2002, another notice of deposition was filed, scheduling Thompson's deposition for June 13, 2002. On June 5, 2002, this deposition was subsequently rescheduled, by agreement of the parties, for June 24, 2002. On the morning of June 24, 2002, Thompson's counsel called appellant's attorney to cancel the deposition due to Thompson's alleged health problems. Appellant filed a motion for an order to pay costs due to the late cancellation of this deposition. Thompson filed a motion in opposition, which was accompanied by a form physician's note.
 {¶ 112} On July 31, 2002, appellant filed a motion for an order of contempt, based upon Summit Gardens' failure to comply with the court's September 18, 2001 order for discovery sanctions. On the same date, appellant filed another motion to compel discovery, based upon a claim that appellees failed to provide information and documents requested in the May 13, 2002 discovery request. *Page 29 
 {¶ 113} On August 5, 2002, appellant filed another notice of deposition of party witnesses, scheduling oral depositions for Robert and Aaron Thompson on August 16 and August 20, 2002, respectively.
 {¶ 114} On August 20, 2002, Summit Gardens filed its second motion for relief from judgment, pursuant to Civ.R. 60(B), seeking to vacate the court's September 18, 2001, order for discovery sanctions.
 {¶ 115} On August 28, 2002, the court issued a hearing notice for September 13, 2002, in which it was to hear all of the outstanding motions. This hearing was subsequently rescheduled for November 18, 2002. On August 29, 2002, appellees filed a motion for judgment on the pleadings, pursuant to Civ.R. 12(C).
 {¶ 116} On November 18, 2002, the magistrate held a hearing on the outstanding motions. Around this time, the court also scheduled a conference with counsel in order to schedule the deposition of Thompson. As a result of this conference, the magistrate issued an order tentatively scheduling December 17 or 18, 2002, and providing for an alternate date of December 30, 2002. A notice of deposition reflecting the magistrate's order was filed with the court on November 26, 2002. Again, the scheduled deposition did not occur, due to Thompson's alleged health problems.
 {¶ 117} On the same date, the magistrate issued her decision disposing of appellant and appellees' outstanding motions. The magistrate denied appellees' motion for relief from the court's September 18, 2001 order imposing sanctions. The magistrate held that although she believed that Thompson was suffering from some serious health problems, "such problems did not totally interfere with his ability to *Page 30 
conduct business during the fall of 2002. And while Mr. Thompson was unrepresented for a time, he still had an obligation to either seek new counsel or comply with the rules of discovery on his own." The magistrate's decision denied appellees' motion for judgment on the pleadings. The magistrate's decision ordered Thompson to pay appellant's counsel $45.00 for costs incurred as a result of his late cancellation of his deposition, finding that Thompson "had a scheduled medical appointment on June 24, 2002," and, therefore, "could have notified Lemongelli's attorney prior to the morning of the deposition that he would be unable to attend." (Emphasis sic). The magistrate's decision denied appellant's other motions for sanctions and his motion to find appellees in contempt, but granted his motion to compel the production of certain documents, ordering that such documents should be produced by December 11, 2002.
 {¶ 118} On December 9, 2002, appellees moved for a protective order to prevent appellant from discovery of certain documents. Attached to the motion for protective order was an affidavit from Thompson, averring that he was "a retired citizen," with "no authority to release any information regarding any documents requested," and stating that "any information requested must be addressed to the owners of the people who have authority to release any information" regarding the defendant entities. The affidavit did not, however, provide the names of any individuals having such authority. This motion was denied by the trial court the following day.
 {¶ 119} On December 12, 2002, appellees filed objections to the magistrate's decision of November 26, 2002. Appellees did not file a transcript with their objections. On December 13, 2002, the trial court overruled appellees' objections and adopted the *Page 31 
magistrate's decision in full. On December 20, 2002, appellees herein filed a notice of appeal with this court, challenging the trial court's December 13, 2002 judgment adopting the magistrate's decision, as well as the court's December 10, 2002 judgment denying a protective order. The appeal was dismissed by this court on June 16, 2003, for lack of a final order.
 {¶ 120} On June 25, 2003, appellant motioned the court for leave to file a second amended counterclaim, which was granted. On July 28, 2003, appellant filed his second amended counterclaim. On the same date, the court scheduled a status conference to be held on August 15, 2003.
 {¶ 121} On August 7, 2005, appellees filed two motions. The first was a Motion in Opposition to appellant's Motion for Leave to file the second amended counterclaim, which had previously been granted by the trial court. The second was a motion to continue the status conference, citing Robert Thompson's unavailability due to complications from various medical procedures.
 {¶ 122} On August 15, 2003, the status conference went forward. While Thompson was excused from the status conference, his attorney, Ms. Ross, failed to appear, and was ordered to show cause. Following this status conference, the trial court rescheduled jury trial for June 1, 2004. Attorney Ross responded to the court's order to show cause as required, and was not held in contempt.
 {¶ 123} On October 21, 2003, appellant filed a notice of deposition, pursuant to Civ.R 30(B)(5), requesting that Summit Gardens and other third-party business defendants named in the cross-complaint "designate one or more employee[s], *Page 32 
officers], agent[s] or other person[s] duly authorized to testify on their behalf" on October 31, 2003. A second notice of deposition, directed toward Thompson was filed on the same date, directing that he also appear on October 31, 2003 for deposition.
 {¶ 124} After further negotiations between the parties, Thompson finally appeared for his deposition on November 25, 2003. A review of the transcript reveals no evidence that Thompson was incompetent, or failed to understand the proceedings against him. To the contrary, Thompson would answer certain questions posed by appellant's attorney in great detail, while at other times he refused to answer questions. Eventually, Thompson became more and more recalcitrant, refusing to produce and/or be questioned on certain documents, and the deposition abruptly ended when Thompson told appellant's counsel to "get the hell out of here."
 {¶ 125} On December 2, 2003, appellant filed a notice of a deposition for December 5, 2003, in order to "continue the oral deposition of Robert R. Thompson" started on November 25, 2003. Thompson did not appear for further depositions.
 {¶ 126} On December 9, 2003, attorney Ross filed a motion to withdraw as counsel, stating that "she was informed by telephone that Robert R. Thompson was terminating counsel's legal representation * * *."
 {¶ 127} As is clear from the foregoing, the evidence establishes that for almost a three year period, from April 2001, until December 2003,prior to the time the majority and the trial court deemed Thompson to be"incompetent," Thompson engaged in deliberate dilatory tactics to prevent discovery. *Page 33 
 {¶ 128} During that time, appellant served no less than two motions to compel discovery. In addition, Thompson violated a court order requiring him to appear for deposition on September 28, 2001, and subsequently failed to attend at least six other scheduled depositions. When he appeared for deposition in November of 2003, he did not appear to have any difficulties with his memory or understanding, yet his manner was recalcitrant and combative, and he refused to answer questions posed to him during the deposition. Thompson also failed to produce documents at the time of the deposition as ordered by the court. He ended the deposition by ordering appellant's counsel to "get the hell out of here." Furthermore, there are clear examples of delays in the proceedings and the discovery process occasioned by Thompson's firings of two attorneys, his failed attempt to represent himself, and the filing of an appeal that was dismissed by this court for lack of a final order. Such actions are more than enough to "create a presumption of willfulness or bad faith." Johnson Controls, Inc. v. Cadle Co., 11th Dist. No. 2006-T-0030, 2007-Ohio-3382, a t ¶ 16 (citations omitted).
 {¶ 129} Thompson has not met the second requirement set forth inGTE, i.e., he has not demonstrated that he is "entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through 5."
 {¶ 130} With regard to the issue of the timeliness of the filing of the motion for relief from judgment, none of the cases relied upon by the majority apply since Thompson was never declared legally incompetent. Although there is no question Thompson suffered from a variety of ailments, a delay of 18 months was unreasonable in this case without such a declaration. *Page 34 
 {¶ 131} As the majority correctly noted, "an attorney's negligence may be imputed to the client." In the instant matter, Attorney Jurczenko filed objections to the magistrate's decision awarding damages, and timely filed a notice of appeal to the trial court's original grant of default judgment on August 18, 2004. Notwithstanding the fact that appellees' appeal was subsequently dismissed by this court for failure to prosecute, the Civ.R. 60(B) motion which is the subject to the current appeal was not filed until November 5, 2005.
 {¶ 132} It is a well-settled proposition of law that a motion under "Civ.R. 60(B) is not a substitute for a timely appeal." In reMeans, 11th Dist. NO. 2004-T-0138, 2005-Ohio-6079, at ¶ 21 (citations omitted); Eyre v. Eyre, 11th Dist. No. 2005-P-0062, 2006-Ohio-6492, at ¶ 23 (citations omitted); Browning v. Oakwood Mgt. Co., 10th Dist. No. 02AP-1136, 2003-Ohio-2142, at ¶ 12 (citation omitted).
 {¶ 133} Furthermore, despite Jurczenko's subsequent disciplinary violations, and despite Thompson's history of illness, Thompson was never declared legally incompetent, and was represented by two attorneys during the course of the proceedings. "Parties choose counsel at their peril." United States v. Veal (W.D.Mo 2004), 365 F.Supp.2d 1034, 1037
(citation omitted). Pursuant to Civ.R. 8(H), an attorney representing an allegedly incompetent person is required to disclose "incompetency at the earliest possible instance in order to avoid a party from being ambushed by an incompetency defense at a later time." CitizensBank, 1997 Ohio App. LEXIS 2876, at *13. *Page 35 
 {¶ 134} A review of the record reveals that Thompson, through Summit Gardens, had a long-standing relationship with Attorney Jurczenko prior to any claim or evidence of incompetence. Thompson's deposition testimony revealed that attorney Alexander Jurczenko was "one of the statutory agents" and "general counselor" of Summit Gardens, and had been serving in this capacity for approximately two years. Moreover, appellees' first motion for relief from judgment, filed on March 14,2002, contains a letter dated April 13, 2001, addressed to attorney Jurczenko, who was not the attorney of record at the time, from Mark Lipton, M.D. The letter stated that Thompson was under his care following a "rather major thoracic operation," and was "still suffering from some memory difficulties as well as significant shortness of breath."
 {¶ 135} Since there is no evidence that Thompson was legally incompetent or unrepresented during the period in question, the trial court's granting of his motion for relief for judgment was not warranted. The judgment of the Portage County Court of Common Pleas should be reversed. *Page 1